UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| TERENCE POLETTI, LEONARD COSTA, CHRISTOPHER J. CHAPMAN, STEVEN NIEVES, ARTHUR COMBS, MICHAEL ASHTON, LEONARD CARLO, KIRK RODRIGUEZ, STEVEN WEIDLER, MIGUEL MIELES, ROBERT ELISEO, VINCENT CARRIERI, ABRAHAN ROSARIO, MATTHEW DUNDIE, N. WILLIAM GOOD, JEFFREY GOOD, NICK PURCELL, ANGEL LOPEZ, GERARD AMITRANO, STEPHEN MARTIN,  THOMAS LEGOTTE, TERENCE CARR, TERENCE CARR II, and MERYL WALDER AS THE EXECUTOR OF THE ESTATE OF ALAN WALDER, on behalf of themselves and all others similarly situated, | : |
| Plaintiffs, | : 1:21-cv-07603-VSB |
| - against - | : |
| PEPSI-COLA BOTTLING COMPANY OF NEW YORK, INC., REGINALD GOINS, WILLIAM W. WILSON, HAROLD HONICKMAN, JEFFREY HONICKMAN, JOSEPH KLINGLER, SCOTT ALLMERS, and JOSEPH HAYES, | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION PURSUANT TO SECTION 4 OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. §§ 1 *ET SEQ.*, TO ENFORCE THE TERMS OF THE PARTIES' ARBITRATION AGREEMENT

EPSTEIN BECKER & GREEN, P.C.
875 Third Avenue
New York, New York 10022
Tel: (212) 351-4500
Fax: (212) 878-8600
Attorneys for Defendants

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL HISTORY AND STATEMENT OF RELEVANT FACTS ............................... 3

    A. Relevant Court Proceedings ................................................................................. 3

    B. Plaintiff Carrieri's Distributor Agreements with PCNY ......................................... 4

        1. Plaintiff Carrieri's Prior Distributor Agreement ............................................ 4

        2. Plaintiff Carrieri's Current Distributor Agreement ....................................... 5

            a. Formation and Negotiation ................................................................. 5

            b. Independent Contractor Status .......................................................... 6

            c. Other Relevant Sections in the Current Distributor Agreement ......... 7

    C. Arbitration Proceedings Before JAMS ................................................................. 8

        1. Demand for Arbitration ................................................................................. 8

        2. Relevant Correspondence with JAMS .......................................................... 9

ARGUMENT ........................................................................................................................ 16

I.   PLAINTIFF CARRIERI SHOULD BE COMPELLED TO PAY JAMS' FILING
     FEE ASSESSED UNDER THE JAMS COMPREHENSIVE RULES AND TO
     SHARE EQUALLY IN THE FEES AND COSTS OF ARBITRATION
     PURSUANT TO SECTION 23.2 OF THE CURRENT DISTRIBUTOR
     AGREEMENT .................................................................................................... 16

    A. Section 23.2 of the Current Distributor Agreement Incorporates the JAMS
       Comprehensive Rules and Requires that the Parties Share Equally in the Fees
       and Costs of Arbitration Unless the Arbitrator Awards Fees Pursuant to a
       Statute ............................................................................................................. 17

    B. JAMS' Minimum Standards Do Not Apply to Plaintiff Carrieri's Arbitration ........... 20

        1. By Their Terms, the Minimum Standards Do Not Apply ................................. 20

        2. Section 23.2 of the Current Distributor Agreement Does Not Incorporate
          the Minimum Standards ................................................................................. 22

FIRM:67338370v1

II. IF THIS COURT CONCLUDES THAT THE ISSUES RAISED BY THIS MOTION REQUIRE THAT THE ARBITRATOR, RATHER THAN THIS COURT, INTERPRET THE PARTIES' ARBITRATION AGREEMENT, THEN THIS COURT SHOULD ORDER PLAINTIFF CARRIERI TO COMPLY WITH SUCH AGREEMENT IN THE INTERIM.......................................................................26

CONCLUSION...............................................................................................................27

## TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Am. Express Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013)................................................................................................17

*Berisha v. Stan, Inc.*,
   461 F. Supp. 3d 1257 (M.D. Fla. 2020)................................................................20

*Bissonnette v. LePage Bakeries Park St.*,
   No. 23-51. ................................................................................................................4

*Brown v. Peregrine Enters., Inc.*,
   No. 22-2959, 2023 WL 8800728 (2d Cir. Dec. 20, 2023).....................................16

*Collins & Aikman Floor Coverings Corp. v. Froehlich*,
   736 F. Supp. 480 (S.D.N.Y. 1990) .......................................................................27

*Donohue v. Cuomo*,
   38 N.Y.3d 1 (2022)................................................................................................23

*Epic Sys. Corp. v. Lewis*,
   584 U.S. 497 (2018)...............................................................................................16

*Flag Wharf, Inc. v. Merrill Lynch Capital Corp.*,
   40 A.D.3d 506 (N.Y. App. Div. 2007) .................................................................23

*Giannakopoulus v. Figame Realty Mgmt.*,
   219 A.D.3d 803 (N.Y. App. Div. 2023) ...............................................................25

*Goobich v. Excelligence Learning Corp.*,
   No. 5:19-cv-06771-EJD, 2020 WL 5593011 (N.D. Cal. Sept. 18, 2020)..............25

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*,
   424 F.3d 195 (2d Cir. 2005)..................................................................................24

*Mackris v. O'Reilly*,
   17 Civ. 9483, 2019 WL 11000205 (S.D.N.Y. Mar. 6, 2019) ...............................18

*Mastrovincenzo v. New York*,
   435 F.3d 78 (2d Cir. 2006)....................................................................................22

*Miller v. Mercuria Energy Trading, Inc.*,
   291 F. Supp. 3d 509 (S.D.N.Y. 2018)...................................................................24

*Nanopierce Techs., Inc. v. Southridge Capital Mgmt.*,
   No. 02 Civ 0767, 2008 WL 250553 (S.D.N.Y. Jan. 29, 2008)..............................23

FIRM:67338370v1

*Newmont Mines Ltd. v. Hanover Ins. Co.*,
    784 F.2d 127 (2d Cir. 1986)........................................................................22

*Samba Enters., LLC v. iMesh, Inc.*,
    No. 06 Civ. 7660(DLC), 2009 WL 705537 (S.D.N.Y. Mar. 19, 2009)..................24

*Smiga v. Dean Witter Reynolds, Inc.*,
    766 F.2d 698 (2d Cir. 1985)...................................................................3, 20

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)................................................................................24

*World of Boxing LLC v. King*,
    56 F. Supp. 3d 507 (S.D.N.Y. 2014)...........................................................17

**Statutes**

Fair Labor Standards Act .............................................................................1

Federal Arbitration Act ........................................................................1, 16, 17

New York Labor Law ..................................................................................1

FIRM:67338370v1

## PRELIMINARY STATEMENT

Defendants Pepsi-Cola Bottling Company of New York, Inc. ("PCNY"), Reginald Goins, William W. Wilson, Harold Honickman, Jeffrey Honickman, Joseph Klingler, Scott Allmers, and Joseph Hayes (collectively, "Defendants") respectfully submit this memorandum of law in support of Defendants' motion, pursuant to section 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), to enforce the terms of the parties' negotiated current distributor agreement, by compelling Plaintiff Vincent Carrieri ("Plaintiff Carrieri") to pay JAMS' filing fee assessed in arbitrations under the JAMS' Comprehensive Arbitration Rules and Procedures and to share equally in the fees and costs of arbitration pursuant to the parties' arbitration agreement.

In this litigation, Plaintiffs claim they were improperly classified as independent contractors, resulting in a failure to pay, *inter alia*, minimum wage and overtime compensation under the Fair Labor Standards Act and New York Labor Law. On August 27, 2024, while Plaintiff Carrieri was participating in the *Poletti* Plaintiffs' motion to reconsider this Court's September 6, 2023 Opinion & Order compelling him and his co-Plaintiffs to arbitrate, Plaintiff Carrieri filed a Demand for Arbitration with JAMS (the contractually designated arbitration administrator), naming Defendants as Respondents. Plaintiff Carrieri's Distributor Agreement with PCNY expressly provides that the arbitration shall be administered pursuant to JAMS' Comprehensive Arbitration Rules and Procedures ("Comprehensive Rules"). Despite this clear contractual requirement, Plaintiff Carrieri submitted his Demand for Arbitration under JAMS' Employment Arbitration Rules and Procedures ("Employment Rules"), to which PCNY never agreed to be bound. In addition, Plaintiff Carrieri incorrectly asserted to JAMS that he was required to arbitrate as a "condition of employment," such that, as an "employee," he was only responsible for $400 of the $2,000 filing fee, with the balance to be paid by his "employer."

1

Subsequently, on September 10, 2024, a JAMS administrator informed the parties that, after JAMS' review of Plaintiff Carrieri's Demand and accompanying documents, JAMS decided that JAMS' Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("Minimum Standards") applies to the arbitration, "notwithstanding any contrary provisions in the parties' pre-dispute arbitration agreement." Pursuant to the Minimum Standards, JAMS is attempting to hold Defendants responsible for paying the $1,600 balance of JAMS' filing fee and other costs, "including . . . all professional fees for the arbitrator's services."

On September 17, 2024, Defendants objected to JAMS' application of the Minimum Standards as contrary to the terms of parties' agreement to arbitrate; inapplicable because Plaintiff Carrieri is not a PCNY employee; and violative of JAMS' policy that the Minimum Standards "do not apply . . . if the employee was represented or advised by counsel during the negotiations" of the arbitration clause in issue. Defendants further objected that JAMS' application of the Minimum Standards improperly presupposes the outcome of the very dispute at the heart of this misclassification litigation, *i.e.*, whether Plaintiff Carrieri was properly treated as an independent contractor or should be considered an employee. After the parties submitted their positions on the applicability of the Minimum Standards, JAMS issued a decision on December 4, 2024, advising that the Minimum Standards will apply to the Carrieri arbitration. JAMS also advised that "any further issue about whether the Minimum Standards apply should be directed to the arbitrator once appointed," but that any decision by the arbitrator on the issue would be advisory because JAMS would make the "final determination" on the application of the Minimum Standards to the arbitration.

Defendants then requested JAMS to stay the arbitration while Plaintiffs, including Carrieri, challenged this Court's September 6, 2023 Opinion & Order compelling arbitration. JAMS denied

the request, stating, *inter alia*, that it "will proceed with administration of [the] arbitration absent a court order or party agreement stating otherwise," and adhering to its prior decision that the Minimum Standards would apply to the arbitration.

Defendants respectfully request that this Court enter an Order enforcing the parties' agreement to arbitrate under the JAMS Comprehensive Rules, and requiring that Plaintiff Carrieri pay the entire initial JAMS' filing fee and a pro rata share of JAMS fees and expenses, including an equal share of the arbitrator's compensation.[1]

## PROCEDURAL HISTORY AND STATEMENT OF RELEVANT FACTS

### A. Relevant Court Proceedings

On September 6, 2023, this Court issued an Opinion & Order granting Defendants' motions to compel all Plaintiffs to arbitrate their claims in their misclassification lawsuit against Defendants pursuant to the terms of their respective Distributor Agreements with PCNY. (Sept. 6 Op. & Order 1-2 & n.2, ECF No. 97.) Pursuant to the Opinion & Order, Plaintiff Carrieri was compelled to arbitrate under the terms of an arbitration clause in a Distributor Agreement with PCNY that became effective January 4, 2021. (*Id.*)

On September 18, 2022, Plaintiffs filed a motion for reconsideration of this Court's Opinion & Order granting Defendants' motions to compel arbitration. (ECF No. 98.) Defendants opposed. (ECF Nos. 100, 110.)

On October 4, 2023, Plaintiffs filed a motion to stay the case pending the Supreme Court's decision in *Bissonnette v. LePage Bakeries Park St.*, No. 23-51. (ECF No. 101.) Defendants opposed. (ECF No. 107.)

---

[1] Because this Court previously ordered Plaintiff Carrieri to arbitrate his claims (ECF No. 97), this Court has jurisdiction over this motion. *See Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 705 (2d Cir. 1985) ("[A] court which orders arbitration retains jurisdiction to determine any subsequent application involving the same agreement to arbitrate.").

3

On October 6, 2023, Plaintiffs filed a notice of interlocutory appeal from this Court's Order granting Defendants' motions to compel arbitration. (ECF No. 105.) On December 15, 2023, the Court of Appeals for the Second Circuit advised that Plaintiffs' appeal would be stayed pending resolution of Plaintiffs' motion for reconsideration. (ECF No. 112.)

On November 18, 2024, while the motions for reconsideration and to stay were pending before this Court, Defendants filed a letter motion to deny as moot, as to Plaintiff Carrieri, the pending motions for reconsideration and to stay, after Plaintiff Carrieri filed a Demand for Arbitration with JAMS pursuant to the arbitration agreement contained in his Distributor Agreement with PCNY, effective January 4, 2021. (ECF No. 123.) On January 7, 2025, this Court denied Plaintiffs' motion for reconsideration and, therefore, did not rule on whether the motion for reconsideration was moot as to Plaintiff Carrieri. (Jan. 7 Op. & Order 10 n.3, ECF No. 134.)

**B.  Plaintiff Carrieri's Distributor Agreements with PCNY**

Plaintiff Carrieri has been engaged as a distributor with PCNY for approximately 20 years, under multiple Distributor Agreements. (Declaration of Lewis Gantman ("Gantman Decl."), dated April 4, 2025, ¶ 10.)  V.D.C. Distributors, Inc. and Plaintiff Carrieri, as Shareholder of V.D.C., have entered into at least two commercial distributor agreements with PCNY, the first effective May 9, 2014 ("Prior Distributor Agreement"), and the current agreement effective January 4, 2021 ("Current Distributor Agreement" or "Distributor Agreement"). (*Id*. ¶ 11.)  Pursuant to the Prior Distributor Agreement, Plaintiff Carrieri became the sole owner of his current distributorship, V.D.C. Distributors, Inc., and continues to operate it today. (*Id*. ¶ 12.)

**1.  Plaintiff Carrieri's Prior Distributor Agreement**

The Prior Distributor Agreement and its multiple amendments were expressly negotiated by the New York Pepsi-Cola Distributors Association, Inc. ("Distributors Association"), a now-

defunct trade organization that, at the time, was authorized to negotiate such agreements on behalf of its independent distributor members.  (*Id.* ¶ 13, Ex. 1, May 9, 2014 Distributor Agreement cover page (indicating that the four amendments incorporated therein were entered into "between New York Pepsi-Cola Distributors Association, Inc." and PCNY, and subsequently signed by Plaintiff Carrieri).)

Plaintiff Carrieri agreed that he was entering into the Prior Distributor Agreement as an independent contractor.  (*Id.* ¶ 14; Ex. 1, Ex. A, ¶ 17.)  While operating as an independent contractor under the Prior Distributor Agreement, Plaintiff Carrieri had the right to, *inter alia*, hire his own employees to perform the work of his distributorship and assign his rights under the Prior Distributor Agreement to another qualified distributor.  (*Id.* ¶ 15; Ex. 1, Ex. A, ¶¶ 3, 16.)

The Prior Distributor Agreement contained an arbitration provision.  (*Id.* ¶ 16; Ex. 1, Ex. A, ¶ 22, as amended by Ex. B, ¶ Eighth.)  The fees and costs of arbitration under the Prior Distributor Agreement, including the arbitrator's fees, were by practice split equally among the parties.  (*Id.* ¶ 17.)

### 2. Plaintiff Carrieri's Current Distributor Agreement

#### a. Formation and Negotiation

Over a period of six months in 2020, PCNY negotiated the provisions in the Current Distributor Agreement with the Distributors Association, whose officers (also distributors) were authorized to negotiate such agreements on behalf of its members, including Plaintiff Carrieri. (Gantman Decl. ¶ 18.)  During the negotiations over the terms of the Current Distributor Agreement, the Distributors Association and its members (including Plaintiff Carrieri) were represented by David Fleisher, Esq., an experienced attorney from the national law firm Haynes and Boone, LLP ("Haynes Boone").  (*Id.* ¶ 19.)

FIRM:67338370v1

PCNY was also represented by experienced counsel during the negotiations over the terms of the Current Distributor Agreement.  (*Id.* ¶ 20.)  Various iterations of the draft Current Distributor Agreement were circulated among the parties.  (*Id.* ¶ 22.)  Counsel for PCNY had at least three extended conference calls with Josephine Darretta (then President of the Distributors Association), the members of the Association Board, who participated from time to time, and Mr. Fleischer to negotiate the terms of the Current Distributor Agreement.  (*Id.* ¶ 21.)  During the calls, the parties exchanged viewpoints and suggested changes to the terms of the Current Distributor Agreement. (*Id.*)  Plaintiff Carrieri was also advised to consult an attorney of his choosing prior to executing the Distributor Agreement.  (*Id.* ¶ 23, Ex. 2, §§ 9.2, 24.)

After PCNY and the Distributors Association reached an agreement on the new Distributor Agreement, each distributor was given the option to sign the Current Distributor Agreement, or not.  (*Id.* ¶ 24.)  Several distributors declined to sign the Current Distributor Agreement, and continued operating under the Prior Distributor Agreement instead, subject to the expiration dates of such agreements.  (*Id.* ¶ 25.)[2]  Plaintiff Carrieri, on the other hand, voluntarily chose to accept the economic benefits associated with the Current Distributor Agreement.  (*Id.* ¶ 27.)  He was not required to sign the Current Distributor Agreement, and could have continued operating his business under the Prior Distributor Agreement, subject to its termination date.  (*Id.* ¶ 28.)

### b.    Independent Contractor Status

Plaintiff Carrieri agreed that he was entering into the Current Distributor Agreement as an independent contractor.  (*Id.* ¶ 29; Ex. 2, at 1, §§ 9.1, 9.2.)  The parties to the Current Distributor Agreement intended that the Distributor would be "an independent contractor" and "not an

---

[2] In this matter, Plaintiffs Arthur Combs, Terence Poletti, Gerard Amitrano, Matthew Dundie, Angel Lopez, Nick Purcell, Leonard Costa, N. William Good, and Jeffrey Good continue to operate under the Prior Distributor Agreement, subject to its arbitration clause and expiration date.  (Gantman Decl. ¶ 26.)

6

employee of the Company for any purpose." (Gantman Decl., Ex. 2, at 1.) Section 9.1 of the Agreement provides that "[t]he Distributor in its relation to the Company shall at all times be a separate business entity which is an independent contractor, not an agent or employee of the Company," and "[t]he independent contractor relationship between the Distributor and the Company is an essential element of [the] Agreement." *(Id.*, Ex. 2, § 9.1.) In addition, in Section 9.2 of the Agreement, Plaintiff Carrieri, in his capacity as "Shareholder," expressly acknowledged: "Both the Shareholder and Distributor intend that the Distributor will provide the sales and distribution services required under this Agreement and strictly as a separate business entity that is an independent contractor, and not as an employee of the Company for any purpose." *(Id.*, Ex. 2, § 9.2.)

Had Plaintiff Carrieri wished to be treated as a PCNY employee, he could have applied for employment with PCNY as a delivery truck driver or warehouse operator and become a member of the employees' collective bargaining unit of Teamsters Local 812, instead of making the capital investments necessary to become an independent distributor. (Gantman Decl. ¶ 30.)

As an independent contractor under the Current Distributor Agreement, Plaintiff Carrieri has the right to, *inter alia*, hire his own employees to perform the work of his distributorship and assign his rights under the Current Distributor Agreement to another qualified distributor. *(Id.* ¶ 31; Ex. 2, §§ 2.4(c), 11.)

### c.    Other Relevant Sections in the Current Distributor Agreement

Section 23.2 of the Current Agreement, titled "Arbitration Rules/Organizations," provides that arbitrations "shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules." (Gantman Decl., Ex. 2, § 23.2.) Per Section 23.2, "[e]ach party shall bear its own fees, costs and disbursements in

7

such proceeding, unless the arbitrator awards fees pursuant to a statute authorizing the award of such fees." (*Id.*, Ex. 2, § 23.2.)   In addition, Section 23.2 states: "The decision or award of the arbitrator shall be final and binding upon the parties hereto." (*Id.*, Ex. 2, § 23.2.)  "The arbitrator shall not have the authority to alter, modify or amend the terms of this Agreement, which can only be altered, modified or amended in writing by mutual agreement of the Parties." (*Id.*, Ex. 2, § 23.1.)

### C.  Arbitration Proceedings Before JAMS

#### 1.  Demand for Arbitration

On August 27, 2024, Plaintiff Carrieri filed a Demand for Arbitration ("Demand") with JAMS.  (Declaration of Patrick G. Brady ("Brady Decl."), dated April 4, 2025, ¶ 4, Ex. A.)  Under the "Rules & Fees" heading in section 2 of the Demand, the following two subheadings appear: "Arbitration Rules" and "Filing & Submission Fees." (*Id.*, Ex. A.)  Under the "Arbitration Rules" subheading, Plaintiff Carrieri, contrary to the specific terms of his arbitration agreement in the Current Distributor Agreement, entered: "JAMS Employment Arbitration Rules and Procedures." (*Id.*, Ex. A.)  Under the "Filing & Submission Fees" subheading, Plaintiff Carrieri entered: "For matter based on a clause or agreement that is required as a condition of employment, employee pays no more than $400.  Employer pays the balance of filing fee." (*Id.*, Ex. A.)

Under the "Nature of Dispute" heading in section 5, Plaintiff Carrieri, as "Claimant," entered:

> Claimant hereby demands that you submit the following dispute to final and binding arbitration.  This action seeks recovery for unpaid wages under the federal Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL), and all implementing regulations including but not limited to unpaid minimum and overtime wages, unlawful deductions, and uniform expenses.  Additionally, the Claimant seeks damages under the New York Wage Theft Protection Act (WTPA), as well as for unjust enrichment and violations of the New York Franchise Act. The Claimant also seeks such other and further relief as may be necessary and

proper and reserves the right to amend the application and make a more detailed application herein.

(*Id.*, Ex. A.)  Under the "Amount in Controversy" subheading, Plaintiff Carrieri entered "$2000000." (*Id.*, Ex. A.)  Nowhere in his Demand did Plaintiff Carrieri indicate that his dispute involves his classification as an independent contractor. *See* Third Amended Complaint ¶ 5 (ECF No. 92).

### 2.  Relevant Correspondence with JAMS

On September 10, 2024, JAMS invoiced Defendants for $1,600, representing what JAMS considered to be Defendants' portion of the "Non-Refundable Filing Fee" for Plaintiff Carrieri's Demand.  (Brady Decl. ¶ 5, Ex. B.)

On September 10, 2024, JAMS' Senior Arbitration Practice Specialist Monica Biundo also sent a "Notice of Intent to Initiate Arbitration" to all parties.  (*Id.* ¶ 6, Ex. C.)  The notice explained, in relevant part:

> JAMS has received a Demand for Arbitration in the above-referenced matter pursuant to a mandatory pre-dispute arbitration clause contained in a contract between the parties.
>
> Pursuant to the parties' pre-dispute arbitration agreement and JAMS policy, this arbitration shall be conducted in accordance with the JAMS Comprehensive Arbitration Rules and Procedures.  It is important to familiarize yourself with the arbitration rules.  A copy of these rules can be obtained by visiting our website at www.jamsadr.com.
>
> The employee/Claimant has submitted $400.00 of the non-refundable Filing Fee.  Under the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness, the employer/Respondent must pay the remaining $1600.00 of the non-refundable Filing Fee.  Payment is due upon receipt.
>
> Upon receipt of the remaining Filing Fee from Respondent, JAMS will formally commence this matter and proceed with the arbitrator selection process.

(*Id.*, Ex. C)

Also, on September 10, 2024, JAMS, by Ms. Biundo, sent a separate notice to all parties concerning the application of JAMS' Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("Minimum Standards") to the arbitration. (*Id.* ¶ 7, Ex. D.) The notice stated:

> JAMS has received a Demand for Arbitration in the above-referenced matter.
>
> Upon review of the Demand and accompanying documents JAMS has determined that JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness applies.
>
> Please carefully review the enclosed Minimum Standards as JAMS requires that the parties comply with them in order to proceed.
>
> The Minimum Standards will apply notwithstanding any contrary provisions in the parties' pre-dispute arbitration agreement. The parties' agreement to proceed constitutes agreement to the foregoing.
>
> Any further issue about whether the Minimum Standards apply should be directed to the arbitrator once appointed. After hearing from the parties, if the arbitrator believes JAMS should revisit the issue, the arbitrator may advise JAMS accordingly. JAMS will then review the issue, taking the arbitrator's position into consideration, and will make a final determination.

(*Id.*, Ex. D (emphasis added).) Regardless of the arbitrator's decision on whether the Minimum Standards apply, JAMS retains the right to ignore the arbitrator's decision and fashion its own remedy on cost allocation.

The introductory section to Minimum Standards provides, in relevant part:

> This document presents the principles and policies of JAMS on the use of arbitration for resolving employment-related disputes. These policies include the Minimum Standards of Procedural Fairness, which apply to arbitrations based on pre-dispute agreements that are required as a condition of employment. JAMS will administer mandatory arbitrations in employment cases only if the arbitration provision complies with JAMS Minimum Standards.

(*Id.*, Ex. D.)

Section B of the Minimum Standards, titled "Minimum Standards of Procedural Fairness," provides: "If an arbitration is based on a clause or agreement that is required <u>as a condition of</u>

employment, JAMS will accept the assignment only if the proceeding complies with the Minimum Standards of Procedural Fairness for Employment Arbitration." (*Id.*, Ex. D (emphasis added).)

Section B of the Minimum Standards also describes eight (8) Standards that must be complied with where the Minimum Standards are deemed applicable. (*Id.*, Ex. D.)  On the issue of arbitration costs, Standard No. 6, titled "Costs and Location Must Not Preclude Access to Arbitration," provides, in relevant part:

> An employee's access to arbitration must not be precluded by the employee's inability to pay any costs or by the location of the arbitration.  The only fee that an employee may be required to pay is JAMS' initial Case Management Fee.  All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services. . . .
> *Comment*: JAMS does not preclude an employee from contributing to administrative and arbitrator fees and expenses.

(*Id.*, Ex. D.)  In his Demand and other submissions to JAMS relating to the parties' dispute about the application of the Minimum Standards, Plaintiff Carrieri has not asserted that as an independent contractor engaged to sell and distribute PCNY products in his exclusive territory, he is incapable of paying his share of the arbitration fees and costs, as expressly required by the Current Distributor Agreement.

Section B of the Minimum Standards further provides:

> If JAMS becomes aware that an arbitration clause or procedure does not comply with the Minimum Standards, it will notify the employer of the Minimum Standards and inform the employer that the arbitration demand will not be accepted unless there is full compliance with those standards.  In assessing whether the standards are met and whether to accept the arbitration assignment, JAMS, as the ADR provider, will limit its inquiry to a facial review of the clause or procedure.  If a factual inquiry is required, for example, to determine compliance with Minimum Standards, it must be conducted by an arbitrator or court.

(*Id.*, Ex. D.)

At the conclusion of the Minimum Standards, the following text appears in boldface type and italics:

> ***Note: These Minimum Standards do not apply if the agreement to arbitrate was individually negotiated by the employee and the employer, <u>or if the employee was represented or advised by counsel during the negotiations.</u>***

(*Id.*, Ex. D (emphasis added).)    JAMS has ignored its own rules by disregarding PCNY's undisputed position that Carrieri, as a member of the Distributors Association in 2020, was represented by Association counsel during the negotiations for the Current Distributor Agreement.

By a September 17, 2024 letter to JAMS (Ms. Biundo), PCNY objected to JAMS' application of the Minimum Standards and requested reconsideration of that decision.  (Brady Decl. ¶ 8, Ex. E.)  PCNY explained that application of the Minimum Standards was contrary to the terms of the parties' arbitration agreement, which states arbitration will be governed by the Comprehensive Rules and, per those Rules, requires equal sharing of JAMS fees and expenses pursuant to Rule 31.  (*Id.*, Ex. E, at 1.)   PCNY further objected to JAMS' application of the Minimum Standards because this decision improperly presupposes the outcome of the parties' dispute by presuming, based on nothing more than a "facial" review of Plaintiff Carrieri's Demand for Arbitration, that Plaintiff Carrieri is an employee, ignoring evidence to the contrary, including Plaintiff Carrieri's express disavowal of employee status in the Current Distributor Agreement. (*Id.*, Ex. E, at 3-4 (citing Current Distributor Agreement §§ 9.1, 9.2).)

PCNY further objected, *inter alia*, that the Minimum Standards should not apply based on the terms of the Minimum Standards themselves, which expressly state that they do not apply "if the agreement to arbitrate was individually negotiated by the employee and the employer, <u>or if the employee was represented or advised by counsel during the negotiations</u>."  (*Id.*, Ex. E, at 4 (emphasis added).)  PCNY explained that the Current Distributor Agreement was the product of six months of negotiations between PCNY and the Distributors Association, a member association

of PCNY distributors, including Plaintiff Carrieri, who was represented by counsel David Fleischer during the negotiations. (*Id.*, Ex. E, at 4.)

On November 1, 2024, Plaintiff Carrieri submitted his response to PCNY's objections to JAMS' application of the Minimum Standards. (Brady Decl. ¶ 9, Ex. F.) On November 18, 2024, PCNY submitted its reply in further support of its objections to the application of the Minimum Standards. (*Id.* ¶ 10, Ex. G.)

On December 4, 2024, JAMS issued a "Notice to All Parties," advising that it would continue applying the Minimum Standards to the arbitration. (*Id.* ¶ 11, Ex. H.) JAMS stated, *inter alia*:

> In JAMS' September 10, 2024 letter the parties were advised that any further issue about whether the Minimum Standards apply should be directed to the arbitrator once appointed. After hearing from the parties, if the arbitrator believes JAMS should revisit the issue, the arbitrator may advise JAMS accordingly. JAMS will then review the issue taking the arbitrator's position into consideration, and will make a final determination.
>
> The letter further explained that the Minimum Standards will apply notwithstanding any contrary provisions in the parties' pre-dispute arbitration agreement. The Minimum Standards are not a set of arbitration rules, but rather an administrative policy that acts as an overlay to the JAMS Rules. The application of JAMS Comprehensive Rules pursuant to the parties' arbitration agreement is not contrary to the Minimum Standards and JAMS will continue to apply the Comprehensive Rules to this arbitration at this time.
>
> Any further issue with regard to the applicability of the Minimum Standards, applicable rules, or fee sharing for this matter may be raised with the arbitrator upon appointment. Either party may participate in the arbitrator selection process without waiving any objections stated to date.

(*Id.*, Ex. H.)

On December 12, 2024, JAMS, by Ms. Biundo, emailed counsel for the parties requesting that counsel "advise as to the status of payment of the Respondent's portion of the initial non-

refundable filing fee." (*Id.* ¶ 12, Ex. I.) The email attached the original invoice that JAMS issued to Defendants/Respondents on September 10, 2024. (*Id.*, Ex. I.)

On December 17, 2024, PCNY responded to Ms. Biundo requesting that "JAMS stay the arbitration in this matter, including the payment of any fees, pending resolution of a number of related threshold issues that are currently pending before the United States District Court for the Southern District of New York." (*Id.* ¶ 13, Ex. J.) On January 11, 2025, Plaintiff Carrieri opposed PCNY's letter motion for a stay of arbitration. (*Id.* ¶ 14, Ex. K.) On January 17, 2025, Defendants submitted to JAMS a reply in further support of their request to stay arbitration. (*Id.* ¶ 15, Ex. L.)

On February 7, 2025, JAMS issued a "Notice to All Parties" denying PCNY's request for a stay. (*Id.* ¶ 16, Ex. M.) The Notice stated (emphasis added):

> JAMS has received and reviewed the Respondent's request to stay the arbitration, the Claimant's objection, and the parties' related submissions. JAMS has been presented with an agreement that provides for arbitration at JAMS. See Distribution Agreement at Section 23.
>
> Under the JAMS Rules, jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which arbitration is sought, and who are proper parties to the arbitration, shall be submitted to and ruled on by the arbitrator. The arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter. See JAMS Comprehensive Arbitration Rule 11(b).
>
> Accordingly, while JAMS cannot force any party to participate in arbitration, <u>at this time JAMS will proceed with administration of this arbitration absent a court order or party agreement stating otherwise</u>. Any further issues related to the stay should be brought to the arbitrator once appointed.
>
> Regarding the application of Employment Minimum Standards ("Minimum Standards"), as stated in JAMS December 4, 2024 letter, JAMS will continue to apply the Minimum Standards to this matter at this time. As previously stated, <u>any further issue about whether the Minimum Standards apply should be directed to the arbitrator once appointed. After hearing from the parties, if the arbitrator believes JAMS should revisit the issue, the arbitrator may advise JAMS accordingly. JAMS will then review the issue taking the arbitrator's position into consideration, and will make a final determination.</u>

The parties may participate in the arbitrator selection method without waiving any objections stated to date.

(*Id.* ¶ 16, Ex. M.)

On February 25, 2025, JAMS resent its September 10, 2024 invoice requesting that Respondents pay $1,600, representing the remainder of JAMS' filing fee to commence the arbitration.  (*Id.* ¶ 17, Ex. N.)  By letter dated March 7, 2025, Defendants advised JAMS (Ms. Biundo) that Defendants would seek a Court order to enforce the terms of PCNY's arbitration agreement with Plaintiff Carrieri, pursuant to which the parties agreed to arbitrate under the Comprehensive Rules, including their fee-sharing provisions, and further agreed to bear their own fees, costs and expenses.  (*Id.* ¶ 18, Ex. O.)  Plaintiff Carrieri filed his opposition on March 21, 2025, and requested that JAMS "find Respondents have waived their right to arbitrate, terminate the proceedings," and permit Plaintiff Carrieri to "litigate the entire action."  (*Id.* ¶ 19, Ex. P.)

In their March 24, 2025 reply to JAMS, Respondents noted that the relief sought by Plaintiff Carrieri, *i.e.*, being permitted to litigate his claims, is what he has consistently sought since the beginning of this litigation, including via a motion for reconsideration of and appeal from the Court's September 6, 2023 Order compelling arbitration.  (*Id.* ¶ 20, Ex. Q.)  Plaintiff Carrieri's renewed request to litigate raises the question of whether his Demand for Arbitration, knowingly filed under Rules to which PCNY never agreed, was merely a ruse to effectuate precisely this outcome and circumvent the Court's Order.  (*Id.* ¶ 20, Ex. Q.)  Regardless, JAMS' Rules expressly state that "[a]ny recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate."  (*Id.* ¶ 20, Ex. Q.)  Thus, no waiver has occurred, and Respondents remain prepared to arbitrate, under the contractual terms of the parties' negotiated arbitration agreement.  (*Id.* ¶ 20, Ex. Q.)

15

## ARGUMENT

**I.    PLAINTIFF CARRIERI SHOULD BE COMPELLED TO PAY JAMS' FILING FEE ASSESSED UNDER THE JAMS COMPREHENSIVE RULES AND TO SHARE EQUALLY IN THE FEES AND COSTS OF ARBITRATION PURSUANT TO SECTION 23.2 OF THE CURRENT DISTRIBUTOR AGREEMENT**

Section 4 of the FAA permits a district court to compel a party to arbitrate according to the terms of a binding arbitration agreement.  *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018) ("Not only did Congress require courts to respect and enforce agreements to arbitrate; it also specifically directed them to respect and enforce the parties' chosen arbitration procedures."); *Brown v. Peregrine Enters., Inc.*, No. 22-2959, 2023 WL 8800728, at *4 (2d Cir. Dec. 20, 2023) (summary order) (observing that section 4 of the FAA may be used as a means to enforce the terms of an arbitration agreement providing for fee-sharing in arbitration).

Section 4 of the FAA provides, in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for <u>an order directing that such arbitration proceed in the manner provided for in such agreement</u>. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, <u>the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement</u>.

9 U.S.C. § 4 (emphasis added).

Here, Plaintiff Carrieri has refused to arbitrate under the express terms of the Current Distributor Agreement by breaching Section 23.2 of the Current Distributor Agreement concerning the allocation of costs and fees in arbitration.  Section 23.2 of the Current Distributor Agreement, which incorporates by reference the JAMS Comprehensive Rules, including Rule 31(a) concerning fee-sharing, requires that Plaintiff Carrieri pay the entire JAMS filing fee and, thereafter, arbitration costs and expenses are to be shared equally by the parties.  (Gantman Decl., Ex. 2, § 23.2.)  Plaintiff Carrieri subverted Section 23.2 of the Current Distributor Agreement by

16

submitting his Demand under the JAMS Employment Rules rather than the JAMS Comprehensive Rules (as expressly provided in Section 23.2 of the Current Distributor Agreement) and paying a $400 filing fee, leaving the remaining $1,600 of the filing fee to be paid by Defendants.

In further breach, Plaintiff Carrieri has requested that JAMS apply its Minimum Standards to the arbitration. (Brady Decl. ¶ 9, Ex. F.) The Current Distributor Agreement does not incorporate the Minimum Standards because, *inter alia*, the Minimum Standards would effectively re-write the fee-sharing agreement between the parties by shifting to Defendants the entire cost of the arbitration, contrary to the requirement in Section 23.2 that "[e]ach party shall bear its own fees, costs and disbursements in [arbitration], unless the arbitrator awards fees pursuant to a statute authorizing the award of such fees." (Gantman Decl. ¶ 11, Ex. 2, § 23.2.)[3]

Defendants respectfully request that this Court issue an order directing Plaintiff Carrieri to comply with Section 23.2 of the Current Distributor Agreement and the Comprehensive Rules, which require that he pay the entire JAMS' filing fee of $2,000 assessed under the Comprehensive Rules and, thereafter, share equally in the fees and costs of arbitration.

### A. Section 23.2 of the Current Distributor Agreement Incorporates the JAMS Comprehensive Rules and Requires that the Parties Share Equally in the Fees and Costs of Arbitration Unless the Arbitrator Awards Fees Pursuant to a Statute

The Federal Arbitration Act requires courts to "rigorously enforce arbitration agreements according to their terms, including . . . the rules under which that arbitration will be conducted." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citations and internal quotation marks omitted). "As a matter of law, if a contract makes reference to extraneous rules or regulations, the content of those rules or regulations is incorporated into the contract's terms."

---

[3] Moreover, the Minimum Standards only apply to disputes between an employer and an employee and, as discussed in Sections I(B)(1)-(2) *infra*, the Current Distributor Agreement expressly disclaims any employer/employee relationship between Plaintiff Carrieri and PCNY.

*World of Boxing LLC v. King*, 56 F. Supp. 3d 507, 511 (S.D.N.Y. 2014). Thus, where an arbitration provision incorporates by reference the JAMS Comprehensive Rules, the Rules become part of the arbitration agreement. *See, e.g.*, *Mackris v. O'Reilly*, 17 Civ. 9483, 2019 WL 11000205, at *6 (S.D.N.Y. Mar. 6, 2019) (holding that by incorporating the JAMS Comprehensive Rules into their arbitration agreement, the parties delegated questions of arbitrability to the arbitrator pursuant to Rule 11 of the JAMS Comprehensive Rules).

Here, the Comprehensive Rules are incorporated into the Current Distributor Agreement and govern the arbitration between Plaintiff Carrieri and Defendants. (*See also* Brady Decl. ¶ 21, Ex. R, Comprehensive Rule 1(b) ("The Parties shall be deemed to have made these Rules a part of their Arbitration Agreement . . . whenever they have provided for Arbitration by JAMS under its Comprehensive Rules . . . .").)

Comprehensive Rule 31 governs the allocation of fees and expenses in arbitration. (*Id.* ¶ 21, Ex. R.) Comprehensive Rule 31(a) provides, in relevant part: "Each Party shall pay its *pro rata* share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration, unless the Parties agree on a different allocation of fees and expenses." (*Id.* ¶ 21, Ex. R.) Comprehensive Rule 31(c) provides: "The parties are jointly and severally liable for the payment of JAMS Arbitration fees and Arbitrator compensation and expenses." (*Id.* ¶ 21, Ex. R.)

JAMS' fee schedule is divided into sections for "Professional Fees" and "Administrative Fees." (Brady Decl. ¶ 22, Ex. S.) "Professional Fees" are fees paid to the arbitrator as compensation. (*Id.* ¶ 22, Ex. S.) Under "Administrative Fees," the fee schedule states, in relevant part:

> For two-party matters, the Filing Fee is $2,000. . . . The entire Filing Fee must be paid in full to expedite the commencement of the proceedings. Thereafter, a Case

> Management Fee of 13% will be assessed against all Professional Fees, including time spent for hearings, pre- and post-hearing reading and research and award preparation.

(*Id.* ¶ 22, Ex. S.)  Thus, Comprehensive Rule 31(a) requires that Plaintiff Carrieri pay the filing fee of $2,000 and share equally in arbitrator compensation and case management fees.

When Plaintiff Carrieri filed his Demand for Arbitration on August 27, 2024, he improperly asserted the JAMS Employment Rules applied, instead of the Comprehensive Rules. (Brady Decl. ¶ 4, Ex. A.)  Plaintiff Carrieri further asserted, without any proof, that the "matter [was] based on a clause or agreement that is required as a condition of employment," paying only $400 as the filing fee and leaving the $1,600 balance to be paid by Defendants.  (*Id.* ¶ 4, Ex. A.)  He also argued that the Minimum Standards should apply to his arbitration.  (*Id.* ¶ 9, Ex. F.)  Under the Minimum Standards, "[t]he only fee that an employee may be required to pay is JAMS' initial Case Management Fee," and "[a]ll other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services."  (*Id.* ¶ 7, Ex. D.)

Plaintiff Carrieri's position that he is only responsible for the $400 filing fee, and that the Minimum Standards apply to his arbitration, is contrary to Section 23.2 of the Current Distributor Agreement and Comprehensive Rule 31(a), which provide for an equal sharing of fees.  Plaintiff Carrieri's assertions that he is only responsible for a $400 filing fee and that the Minimum Standards apply also cannot be reconciled with Comprehensive Rule 31(c), under which he is jointly and severally liable for arbitration fees and expenses, including the arbitrator's compensation.

Section 23.2 of the Current Distributor Agreement also states that "[e]ach party shall bear its own fees, costs, and disbursements in such [arbitration] proceeding, unless the arbitrator awards

19

fees pursuant to a statute authorizing the award of such fees." (Gantman Decl. ¶ 11, Ex. 2.)  That provision plainly prohibits the shifting of fees imposed on either party by Comprehensive Rule 31(a), unless awarded by the arbitrator pursuant to statute at the conclusion of the arbitration proceeding.

To remedy Plaintiff Carrieri's above breach of Section 23.2 of the Current Distributor Agreement, Defendants respectfully request that this Court enforce Section 23.2 of the Current Distributor Agreement by issuing an order directing Plaintiff Carrieri to pay the remainder of JAMS' filing fee ($1600) and to share equally in the fees and costs of arbitration as required by Comprehensive Rule 31(a), unless such fees and costs are awarded by the arbitrator pursuant to statute at the conclusion of the arbitration proceeding.[4]

### B.  JAMS' Minimum Standards Do Not Apply to Plaintiff Carrieri's Arbitration

#### 1.  By Their Terms, the Minimum Standards Do Not Apply

Plaintiff Carrieri's and JAMS' position that the Minimum Standards, including the $400 filing fee for Claimants, apply to this arbitration is erroneous.  The Minimum Standards are not applicable to Plaintiff Carrieri's arbitration because the Current Distributor Agreement is not an employment contract, but a commercial contract between two business entities.  Moreover, the Current Distributor Agreement was not presented to Plaintiff Carrieri as a condition of employment.  Finally, Plaintiff Carrieri, through his membership in the Distributors Association, was represented by counsel while the terms of the Current Distributor Agreement were negotiated.

---

[4] In response to Defendants' motions to compel arbitration, Plaintiffs did not argue that the fee-sharing arrangement provided for in the Comprehensive Rules is unconscionable, and, therefore, waived any such argument.  *See Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 704 (2d Cir. 1985) (stating that an argument concerning the enforceability of an arbitration agreement was waived because it was not raised in a motion to stay the arbitration).  Any such argument, if made at this time, would be tantamount to a request for reconsideration of this Court's Opinion & Order compelling arbitration and should be denied. *See Berisha v. Stan, Inc.*, 461 F. Supp. 3d 1257, 1259-60 (M.D. Fla. 2020) (denying motion for reconsideration of prior order compelling arbitration under an arbitration agreement with an arbitration fee-sharing provision where plaintiff failed to argue that the fee-sharing provision was unenforceable).

FIRM:67338370v1

The Minimum Standards, by their terms, "apply to arbitration based on pre-dispute agreements that are required as a condition of employment." (Brady Decl. ¶ 7, Ex. D.) Likewise, the reduced filing fee of $400 only applies to "matters based on a clause or agreement that is required as a condition of employment." (*Id.* ¶ 22, Ex. S.) Here, the Current Distributor Agreement repeatedly affirms that Plaintiff Carrieri is an independent contractor, not a PCNY employee. (Gantman Decl. ¶ 29, Ex. 2, at 1, §§ 9.1, 9.2.) Under the Current Distributor Agreement, Plaintiff Carrieri does not operate as an employee, but has the right to, *inter alia*, hire his own employees to perform the work of his distributorship and assign his rights under the Agreement to another qualified distributor. (*Id.* ¶ 31; Ex. 2, §§ 2.4(c), 11.) Because the Current Distributor Agreement is not an employment contract, the Minimum Standards do not apply to Plaintiff Carrieri's arbitration.

Upon conclusion of negotiations between PCNY, the Distributors Association, and its counsel, the Current Distributor Agreement was also not presented to Plaintiff Carrieri as a "condition of employment." Rather, each distributor had the option to sign it, or not. (Gantman Decl. ¶ 24.) Instead of continuing to operate under his Prior Distributor Agreement, Plaintiff Carrieri chose to accept the economic benefits associated with the Current Distributor Agreement. (*Id.* ¶ 27-28.) Further, instead of working under the Prior or Current Distributor Agreement, Plaintiff could have applied for employment with PCNY as a delivery truck driver or a warehouse operator and become a member of the employees' collective bargaining unit. (*Id.* ¶ 30.) Because the Current Distributor Agreement was not presented to Plaintiff Carrieri as a condition of employment, the Minimum Standards, by their terms, do not apply to Plaintiff Carrieri's arbitration.

In addition, the Minimum Standards contain the following disclaimer: "Note: These Minimum Standards do not apply . . . if the employee was represented or advised by counsel during the negotiations." (Brady Decl. ¶ 7, Ex. D.)  It is undisputed that PCNY negotiated the provisions in the Current Distributor Agreement over a period of six months in 2020 with the Distributors Association, which, at the time, was authorized to negotiate such agreements on behalf of its members, including Plaintiff Carrieri.   (Gantman Decl. ¶ 18.)   During the negotiations, the Distributors Association (and by extension its members) was represented by David Fleisher, Esq., an experienced attorney from the national law firm Haynes Boone. (*Id.* ¶ 19.)  Because Plaintiff Carrieri was represented by counsel during the negotiations of the Current Distributor Agreement, the Minimum Standards do not apply to his arbitration before JAMS.[5]

### 2. Section 23.2 of the Current Distributor Agreement Does Not Incorporate the Minimum Standards

As a matter of contract law, the Minimum Standards are not part of the parties' arbitration agreement because they are not expressly or impliedly incorporated into the arbitration provisions in the Current Distributor Agreement; their incorporation would defeat the reasonable expectations of the parties; and their incorporation would render superfluous certain terms in the Current Distributor Agreement.

When interpreting contracts under New York state law, "words should be given the meanings ordinarily ascribed to them and absurd results should be avoided." *Mastrovincenzo v. New York*, 435 F.3d 78, 104 (2d Cir. 2006) (citation omitted); *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 135 (2d Cir. 1986) (stating that contracts should be examined "in light of the business purposes sought to be achieved by the parties" (citation omitted).)  "Courts will not

---

[5] In the Current Distributor Agreement, Plaintiff Carrieri also acknowledged that he had the opportunity to consult with counsel and voluntarily entered into the agreement.  (Gantman Decl. ¶ 23, Ex. 2, §§ 9.2, 24.)

22

rewrite contracts that have been negotiated between sophisticated, counseled commercial entities . . . ." *Flag Wharf, Inc. v. Merrill Lynch Capital Corp.*, 40 A.D.3d 506, 507 (N.Y. App. Div. 2007). "Where a contract was negotiated between sophisticated, counseled business people negotiating at arm's length, courts should be especially reluctant to interpret an agreement as impliedly stating something which the parties specifically did not include." *Donohue v. Cuomo*, 38 N.Y.3d 1, 12 (2022). "[I]n a transaction between sophisticated parties, the Court should not look beyond the terms of the contract if the parties intended the contract to be the complete and final terms of the agreement." *Nanopierce Techs., Inc. v. Southridge Capital Mgmt.*, No. 02 Civ 0767, 2008 WL 250553, at *4 (S.D.N.Y. Jan. 29, 2008).

Here, the Current Distributor Agreement was negotiated by experienced counsel for sophisticated entities representing their commercial interests. (Gantman Decl. ¶¶ 19-20.) Had the negotiating parties desired to incorporate the Employment Rules or the Minimum Standards, they could have done so expressly. They did not. They chose the Comprehensive Rules to govern their arbitration agreement. Further, the Current Distributor Agreement continued the parties' practice under the Prior Distributor Agreement for each party to pay its share of arbitration costs and fees. (*Id.* ¶ 17.)

Section 19.1 of the Current Distributor Agreement also provides that "[a]ll parties agree that there are no promises, terms, conditions, understandings, commitments or obligations in respect of the subject matter hereof, except as set forth herein and therein." (Gantman Decl., Ex. 2.) Through Section 19.1, the parties agreed that no other terms or conditions could be added by implication to the Current Distributor Agreement. Because the Minimum Standards are additional terms and conditions with respect to the arbitration proceeding, they are not implicitly part of the Current Distributor Agreement.

Although Comprehensive Rule 31(a) requires each party to the arbitration to pay "its *pro rata* share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration" (Brady Decl. ¶ 21, Ex. R), the "JAMS fee schedule" as a whole is not incorporated into the Current Distributor Agreement. "Incorporation by reference is limited to the section and purpose for which the incorporated document is identified." *See Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 518 (S.D.N.Y. 2018). Comprehensive Rule 31(a) refers to the "JAMS fee schedule" only for the purpose of determining the what the pro rata share of fees and expenses will be. It would be illogical to read Rule 31(a) to incorporate the Minimum Standards through the fee schedule because the Minimum Standards do not permit the calculation of a "*pro rata* share of JAMS fees and expenses."

In addition, a court should not interpret a contract in a way that would be "commercially unreasonable, or contrary to the reasonable expectations of the parties." *Samba Enters., LLC v. iMesh, Inc.*, No. 06 Civ. 7660(DLC), 2009 WL 705537, at *5 (S.D.N.Y. Mar. 19, 2009); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) ("Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'"). Further, "[a]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (citation omitted).

Reading the Minimum Standards into the Current Distributor Agreement would be contrary to the reasonable expectations of the parties because the Minimum Standards only apply to employment contracts, and the Current Distributor Agreement repeatedly affirms that Plaintiff Carrieri is an independent contractor, not a PCNY employee. (Gantman Decl. ¶ 29, Ex. 2, at 1, §§

9.1, 9.2.)  Those provisions in the Current Distributor Agreement would be rendered superfluous by an interpretation that incorporates the Minimum Standards into the Agreement.  *See Goobich v. Excelligence Learning Corp.*, No. 5:19-cv-06771-EJD, 2020 WL 5593011, at *3 (N.D. Cal. Sept. 18, 2020) (holding an arbitration fee schedule that required an employer to pay the majority of a filing fee was inapplicable because it rendered a contractual provision concerning fee-sharing superfluous).[6]

Further, reading the Minimum Standards into the arbitration agreement would, in effect, require Defendants to pay Plaintiff Carreri's share of the arbitrator's fees as well as other costs, which is an interpretation that runs afoul of New York contract law.  *See Giannakopoulus v. Figame Realty Mgmt.*, 219 A.D.3d 803, 805 (N.Y. App. Div. 2023) (observing that, "when a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed," and that "a departure from the well-understood rule that parties are responsible for their own attorney's fees," should not be inferred "unless the intention to do so is unmistakably clear from the language of the promise").

Accordingly, the Current Distributor Agreement does not incorporate the Minimum Standards because reading the Distributor Agreement to include the Minimum Standards is illogical, would defeat the reasonable expectations of the parties, and would render superfluous Plaintiff Carieri's status as an independent contractor under the Current Distributor Agreement.

---

[6] If JAMS adopted the Minimum Standards to avoid abuses in employer/employee arbitrations, the purpose of the Minimum Standards would not be advanced in this arbitration because Plaintiff Carieri is an independent contractor, not an employee.  Plaintiff Carieri's status is the very subject of the arbitration.

FIRM:67338370v1

II.    **IF THIS COURT CONCLUDES THAT THE ISSUES RAISED BY THIS MOTION REQUIRE THAT THE ARBITRATOR, RATHER THAN THIS COURT, INTERPRET THE PARTIES' ARBITRATION AGREEMENT, THEN THIS COURT SHOULD ORDER PLAINTIFF CARRIERI TO COMPLY WITH SUCH AGREEMENT IN THE INTERIM**

If this Court concludes that an arbitrator should determine the contractual issues raised by this motion, Defendants respectfully request that this Court issue an Order requiring Plaintiff Carrieri to pay the remainder of the JAMS filing fee ($1600) and share equally in the costs and fees of arbitration to allow the parties to submit the contractual issues to arbitration. As discussed in Sections I(B)(1)-(2), *supra*, there is no contractual basis for JAMS to shift any of the filing fee or the costs of arbitration to Defendants. Further, should Plaintiff Carrieri prevail at arbitration, the arbitrator is contractually authorized to award fees and costs as provided by statute, so Plaintiff Carrieri would not be prejudiced by being held to the agreement he signed, pending such determination.

To the extent any dispute remains following this Court's resolution of the instant motion, Defendants also respectfully request that this Court issue an Order compelling the parties to arbitrate the contractual issues raised by this motion before the arbitrator for a final decision. Section 23.2 of the Current Distributor Agreement provides that in arbitration, "the decision or award of the arbitrator shall be <u>final</u> and binding upon the parties hereto." (Gantman Decl., Ex. 2.) Comprehensive Rule 11(a) also provides: "Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration hearing. The resolution of the issue by the Arbitrator shall be final." (Brady Decl. ¶ 21, Ex. R.)

Despite these provisions concerning the finality of the Arbitrator's awards, JAMS has taken the position that, with respect to the applicability of its Minimum Standards, it will make the final determination after an advisory decision by the arbitrator and apply the Minimum Standards notwithstanding any provisions in the parties' pre-dispute arbitration agreement to the contrary.

26

(*Id.* ¶ 16, Ex. M.)  Thus, JAMS has indicated that it intends to apply the Minimum Standards even though the provisions in the Minimum Standards are contrary to the Current Distributor Agreement.

JAMS' position is contrary to the terms of the Current Distributor Agreement and the law. The Current Distributor Agreement provides in Section 23.2 that the arbitrator "shall not have the authority to alter, modify or amend the terms of [the] Agreement, which can only be altered, modified or amended by mutual agreement of the parties." (Gantman Decl., Ex. 2.)  Courts have also held that "[a]n arbitrator cannot re-write a new agreement for the parties." *Collins & Aikman Floor Coverings Corp. v. Froehlich*, 736 F. Supp. 480, 484 (S.D.N.Y. 1990).  Because an arbitrator may not re-write the Current Distributor Agreement, neither can JAMS by extension.

To prevent JAMS from imposing the Minimum Standards and requiring Defendants to pay arbitration fees and costs it did not agree to pay under the Current Distributor Agreement, Defendants respectfully request that this Court enforce the terms of the Current Distributor Agreement concerning fee-sharing in arbitration.  If this Court believes that the interpretation of the parties' arbitration agreement is a matter for the arbitrator, Defendants reserve the right to return to this Court to enforce the arbitrator's decision regarding the allocation of fees and costs if JAMS continues to insist on the application of the Minimum Standards in spite of the parties' agreement to the contrary.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an Order enforcing Section 23.2 of the Current Distributor Agreement and requiring that Plaintiff Carrieri abide by the terms of the arbitration agreement, which includes the parties' cost-sharing agreement, and leaves to the arbitrator the imposition on Defendants of the fees and costs in arbitration should

FIRM:67338370v1

Plaintiff Carrieri prevail on his statutory claims.  If the Court decides that the issues raised by this motion should be decided by an arbitrator, Defendants respectfully request that this Court issue an Order directing Plaintiff Carrieri to pay the remainder of the initial JAMS' filing fee ($1600) and an equal share of fees and costs in arbitration until the appointed Arbitrator issues a final decision on what the parties agreed to with respect to the allocation of fees and costs in arbitration.

Dated: Newark, New Jersey        EPSTEIN BECKER & GREEN, P.C.
        April 4, 2025

                                 By:  */s/ Patrick G. Brady*
                                      Patrick G. Brady
                                      875 Third Avenue
                                      New York, New York  10022
                                      (212) 351-4500

                                      and

                                      One Gateway Center, 13th Floor
                                      Newark, New Jersey  07102
                                      pbrady@ebglaw.com
                                      (973) 642-1900
                                      *Attorneys for Defendants*

FIRM:67338370v1