UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TERENCE POLETTI, LEONARD COSTA, CHRISTOPHER J. CHAPMAN, STEVEN NIEVES, ARTHUR COMBS, MICHAEL ASHTON, LEONARD CARLO, KIRK RODRIGUEZ, STEVEN WEIDLER, MIGUEL MIELES, ROBERT ELISEO, VINCENT CARRIERI, ABRAHAN ROSARIO, MATTHEW DUNDIE, N. WILLIAM GOOD, JEFFREY GOOD, NICK PURCELL, ANGEL LOPEZ, GERARD AMITRANO, STEPHEN MARTIN, THOMAS LEGOTTE, TERENCE CARR, TERENCE CARR II, and MERYL WALDER AS THE EXECUTOR OF THE ESTATE OF ALAN WALDER, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>-against-<br><br>PEPSI-COLA BOTTLING COMPANY OF NEW YORK, INC., REGINALD GOINS, WILLIAM W. WILSON, HAROLD HONICKMAN, JEFFREY HONICKMAN, JOSEPH KLINGLER, SCOTT ALLMERS, and JOSEPH HAYES,<br><br>　　　　　　　　Defendants. | Case 1:21-cv-07603-VSB-RWL |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO PURPORTEDLY ENFORCE THE TERMS OF THE PARTIES' ARBITRATION AGREEMENT

Clifford Tucker, Esq.,
Sacco & Fillas LLP
31-19 Newtown Ave., 7th Floor
Astoria, New York 11102
Ph: 718-269-2243
CTucker@SaccoFillas.com

## TABLE OF CONTENTS

1. PRELIMINARY STATEMENT ..................................................................................5

2. RELEVANT FACTS ...............................................................................................6

3. ARGUMENT...........................................................................................................9

    3.1.    THE COURT SHOULD DENY DEFENDANTS MOTION UNDER THE LAW OF THE CASE DOCTRINE AND DIRECT DEFENDANTS TO COMPLY WITH JAMS' DETERMINATIONS. ....................9

        *3.1.1.    It is Law of the Case that the Arbitration Clause is "Broad" and Requires Arbitration of "any Dispute" Including JAMS' Application of its Minimum Standards and Fee Schedule.................................10*

        *3.1.2.    The Law of the Case Requires the JAMS Arbitrator, Not the Court, to Decide Misclassification Issues.    12*

    3.2.    JAMS, NOT THE COURT, HAS AUTHORITY OVER PROCEDURAL MATTERS, INCLUDING INTERPRETATION OF THE COMPREHENSIVE RULES, APPLICATION OF THE MINIMUM STANDARDS, AND ALLOCATION OF FEES AND COSTS. ...........................................................................15

        *3.2.1.    The Parties' Agreement and JAMS' Comprehensive Rules Delegate Rule Interpretation and Fee Allocation to the JAMS Arbitrator..........................................................................15*

        *3.2.2.    Courts Consistently Hold that Procedural Questions Like Disputes Concerning Interpretation of Arbitration JAMS Rules and Fee Allocation are for the Arbitrator..........................................16*

        *3.2.3.    Defendants' Motion Violates the Court's Stay Order and Undermines the Arbitration that Defendants Sought.....................................................................................17*

        *3.2.4.    The Court Should Discourage Defendants' Forum Shopping by Denying the Motion or Alternatively Find Waiver. ...........................................................................................18*

    3.3.    THE COURT SHOULD DENY DEFENDANTS' MOTION; UPHOLD JAMS' FEE ALLOCATION AND APPLICATION OF THE MINIMUM STANDARDS AND DIRECT THESE PROCEDURAL DISPUTES TO THE JAMS ARBITRATOR. ...........................................................................................19

        *3.3.1.    JAMS Correctly Applied the Minimum Standards, Interpreted the Comprehensive Rules and Fee Schedule and Properly Directed Further Disputes to the Arbitrator. ...........................................19*

        *3.3.2.    JAMS Properly Determined that Arbitration was a Condition of Employment and Correctly Applied its Fee Schedule and Minimum Standards.................................................................23*

        3.3.2.1.    JAMS Properly Applied the Minimum Standards Because the Distributor Agreement was not Individually Negotiated and Plaintiff was not Represented by Counsel.26

        3.3.2.2.    Requiring Plaintiffs to Pay Substantial Upfront Arbitration Fees in FLSA and NYLL Claims Undermines JAMS Minimum Standards and the Statutory Intent. ..................28

4. CONCLUSION .....................................................................................................29

**TABLE OF AUTHORITIES**

CASES

*Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) --------------------------------------------------10
*American Express Bank, Ltd. v. Uniroyal, Inc.,* 164 A.D.2d 275, 278, 562 N.Y.S.2d 613, 616 (1st Dep't 1990) --------------------------------------------------------------------------------------14
*Armor All/STP Prods. Co. v. TSI Prods., Inc.,* 337 F. Supp. 3d 156, 169 (D. Conn. 2018) ----------------11
*Bancol Y Cia. S. En C. v. Bancolombia S.A.,* 123 F. Supp. 2d 771 (S.D.N.Y. 2000) ------------------- 12, 17
*Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 740 (1981)------------------------------ 13, 27, 28
*Bernstein v. Perlmutter,* 37 N.Y.S.2d 95, 96 (Sup. Ct. 1942) ----------------------------------------16
*Birchwood Mgmt. Corp. v. Loc. 670, Stationary Eng'rs, RWDSU, AFL-CIO,* 154 A.D.2d 531, 531 (2d Dep't 1989) -------------------------------------------------------------------------------18
*Bonnie & Co. Fashions v. Bankers Tr. Co.,* 955 F. Supp. 203, 217 (S.D.N.Y. 1997)------------------------22
*Brandifino v. CryptoMetrics, Inc.,* 27 Misc. 3d 513, 524 (Sup. Ct. 2010)-------------------------------19
*Brown v. Peregrine Enters.,* 2023 WL 8800728, at *2 (2d Cir. Dec. 20, 2023)----------------------------17
*Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015)-----------------------------------26
*Chu Chung v. New Silver Palace Restaurants, Inc.,* 272 F. Supp. 2d 314, 317 (S.D.N.Y. 2003)--------------28
*Compania Panemena Maritima San Gerassimo, S.A. v. J.E. Hurley Lumber Co.,* 244 F.2d 286, 288 (2d Cir. 1957) -----------------------------------------------------------------------------------17
*Contec Corp. v. Remote Solution, Co., Ltd.,* 398 F.3d 205, 208 (2d Cir. 2005) ---------------------------21
*E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C.,* 448 F. Supp. 2d 458, 465 (E.D.N.Y. 2006) -27
*Ethelberth v. Choice Sec. Co.,* 91 F. Supp. 3d 339, 350 (E.D.N.Y. 2015) --------------------------------13
*Forrest v. Unifund Fin. Grp., Inc.,* 2007 WL 766297, at *6 (S.D.N.Y. Mar. 13, 2007) ----------------------18
*Frazier v. X Corp,* 739 F. Supp. 3d 219, 230 (S.D.N.Y. 2024) --------------------------------------- passim
*Goobich v. Excelligence Learning Corp.,* No. 5:19-CV-06771-EJD, 2020 WL 5593011 (N.D. Cal. Sept. 18, 2020) ---------------------------------------------------------------------------------------22
*Green v. Torres,* 361 F.3d 96, 100 (2d Cir. 2004) --------------------------------------------------28
*Gustafson v. Bell Atl. Corp.,* 171 F. Supp. 2d 311, 324 (S.D.N.Y. 2001)---------------------------------25
*Holick v. Cellular Sales of N.Y., LLC,* 802 F.3d 391, 399 (2d Cir. 2015) ---------------------------------13
*Howard v. Anderson,* 36 F. Supp. 2d 183, 187 (S.D.N.Y. 1999) -----------------------------------------28
*Hudson v. P.I.P., Inc.,* 793 F. App'x 935 (11th Cir. 2019) --------------------------------------------22
*Hunt v. Mobil Oil Corp.,* 654 F. Supp. 1487, 1511 (S.D.N.Y. 1987) -------------------------------------17
*Idea Nuova, Inc. v. GM Licensing Group, Inc.,* 617 F.3d 177 (2d Cir. 2010) -------------------------------21
*In re Arb. Between Gen. Sec. Nat. Ins. Co. & AequiCap Program Adm'rs,* 785 F. Supp. 2d 411 (S.D.N.Y. 2011) ---------------------------------------------------------------------------------------12
*In re N. Telecom Ltd. Sec. Litig.,* 42 F. Supp. 2d 234, 239 (S.D.N.Y. 1998) -------------------------------10
*In re State,* 147 N.H. 106, 109, 784 A.2d 695, 698 (2001) -------------------------------------------27
*In the Matter of the Arbitration Between [Claimant 1] and [Respondent 1],* 2009 WL 6361357 ----------------27
*Lang v. PTC, Inc.,* No. CV21-04451-KMESK, 2021 WL 5277190, at *4 (D.N.J. Nov. 12, 2021) -----14
*LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.,* 424 F.3d 195, 206 (2d Cir. 2005). -----------------12
*Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. NRG Energy, Inc.,* 53 F.4th 42, 49 (2d Cir. 2022) -------------------------------------------------------------------------------------------10
*Lullo v. Int'l Ass'n of Fire Fighters, Loc. 1066,* 55 N.J. 409, 262 A.2d 681 (1970)------------------------27
*Mackris v. O'Reilly,* No. 17 CIV. 9483 (DAB), 2019 WL 11000205, at *5 (S.D.N.Y. Mar. 6, 2019) ---16
*Marathon Private Equity Fund I, LLC v. Questor Mgmt. Co., LLC,* 20 Misc.3d 1123(A), 2008 WL 2840355, at *4 (Sup. Ct. July 22, 2008) ------------------------------------------------------------14
*Michaels v. Mariforum Shipping, S.A.,* 624 F.2d 411, 414 (2d Cir. 1980) --------------------------------17

*Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509 (S.D.N.Y. 2018), aff'd, 774 F. App'x 714 (2d Cir. 2019)------------------------------------------------------------------------------------------------21

*Nelson v. Am. Standard Inc.,* No. 2-07-CV-10 (TJW), 2007 WL 2329827 (E.D. Tex. Aug. 13, 2007) --27

*Perrin v. Hilton Int'l, Inc.*, 797 F. Supp. 296, 299 (S.D.N.Y. 1992). --------------------------------------13

*PHL Variable Ins. Co. v. Mahler*, 321 F. Supp. 3d 392 (E.D.N.Y. 2018); Sage Sys., Inc. v. Liss, 39 N.Y.3d 27, 31 (2022)------------------------------------------------------------------------------------------22

*Pilvavsky v. U.S. Dep't of Just.*, No. 05 CIV. 2920 (DC), 2006 WL 536635, at *2 (S.D.N.Y. Mar. 6, 2006) -----------------------------------------------------------------------------------------------------------13

*Poletti et al. v. Pepsi-Cola Bottling Company of New York, Inc.,* No. 21-CV-7603 (VSB) ---------------------24

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42 (2d Cir. 1993) --------21

*Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 465 (E.D.N.Y. 2006) ----------------------26

*Rezzonico v. H & R Block, Inc.,* 182 F.3d 144, 148 (2d Cir. 1999).-------------------------------------------10

*Samba Enters., LLC v. iMesh, Inc.*, 2009 WL 705537, at *5 (S.D.N.Y. Mar. 19, 2009), aff'd, 390 F. App'x 55 (2d Cir. 2010) -------------------------------------------------------------------------------------11

*Shubin v. Slate Digital, Inc.,* 2022 WL 168152 (S.D.N.Y. Jan. 19, 2022)------------------------------ 12, 17

*Stafford v. Flextronics Int'l USA, Inc.*, 2016 WL 880505 (D. Kan. Mar. 7, 2016) ----------------------------26

*Stanley v. City of New York*, 71 Misc. 3d 171, 176, 141 N.Y.S.3d 662, 666 (N.Y. Sup. Ct. 2020)--------13

*Stemcor USA, Inc. v. Miracero*, 66 F. Supp. 3d 394, 399 (S.D.N.Y. 2014) ------------------------------------15

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) ------------------------------------11

*Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 693 (S.D.N.Y. 1966) ------------------------------17

*Varley v. Tarrytown Assocs., Inc.*, 477 F.2d 208 (2d Cir. 1973)----------------------------------------------21

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 469 (1989)----------------18

*Wall St. Assocs., L.P. v. Becker Paribas, Inc.*, 818 F. Supp. 679, 683 (S.D.N.Y. 1993), aff'd, 27 F.3d 845 (2d Cir. 1994)----------------------------------------------------------------------------------------------------10

*Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002)-----------------------------------------18

*Williams v. Tully*, 2005 WL 645943 (N.D. Cal. Mar. 18, 2005) ----------------------------------------------26

*Zambrano v. Strategic Delivery Sols., LLC*, 2016 WL 5339552 (S.D.N.Y. Sept. 22, 2016) -----------------22

STATUTES

29 U.S.C. § 203 ------------------------------------------------------------------------------------------------24

29 U.S.C. § 216 ------------------------------------------------------------------------------------------------22

9 U.S.C. § 3 ----------------------------------------------------------------------------------------------------17

N.Y. Lab. Law § 190 -----------------------------------------------------------------------------------------24

1.  **PRELIMINARY STATEMENT**

Plaintiffs respectfully submit this memorandum in opposition to Defendants' motion, which purports to "enforce" the terms of the parties' arbitration agreement but instead seeks to circumvent the arbitration process and evade compliance with JAMS' determinations. Defendants' motion should be denied for multiple reasons grounded in established law and the procedural posture of this case.

First, under the law of the case doctrine, the arbitration clause is broad and requires arbitration of any dispute—including the interpretation of the agreement, and the application of JAMS' "Policy on Employment Arbitration Minimum Standards of Procedural Fairness" ("Minimum Standards") and Fee Schedule. Pltfs' Ex. A; Defts' Ex. S. Importantly, key substantive questions such as misclassification must be decided by the JAMS arbitrator, not this Court.

Second, JAMS—not this Court—has exclusive authority over procedural matters, including interpretation of the Comprehensive Rules, application of the Minimum Standards, and allocation of arbitration fees and costs. The parties' agreement and JAMS' rules expressly delegate these determinations to the arbitrator, a position consistently upheld by courts. Pltfs' Ex. A.

Third, Defendants' motion violates this Court's stay order, undermines the arbitration process they sought, and constitutes impermissible forum shopping. Pltfs' Ex. B (ECF No. 97). The Court should discourage such tactics by denying the motion or, alternatively, finding waiver of Defendants' right to seek relief here.

Finally, the Court should uphold JAMS' fee allocation and its application of the Minimum Standards. JAMS correctly interpreted its Comprehensive Rules and Fee Schedule, properly found arbitration to be a condition of employment, and appropriately applied the Minimum Standards given that the Distributor Agreement was not individually negotiated and Plaintiffs were not represented by counsel. Requiring Plaintiffs to pay substantial upfront arbitration fees in Fair Labor

Standards Act (FLSA) and New York Labor Law (NYLL) claims undermines both the purpose of

JAMS' Minimum Standards and the statutory intent to ensure workers' meaningful access to justice.

    For all these reasons, as detailed herein, the Court should deny Defendants' motion, uphold

JAMS' determinations, and direct Defendants to proceed with arbitration under JAMS' supervision

or hold that Defendants waived arbitration by their refusal to comply with JAMS' decisions and fee

requirements.

## 2.  RELEVANT FACTS

    The Current Agreement identifies and defines the parties as "Pepsi-Cola Bottling Company

of New York, Inc…. (hereinafter referred to as "Company") and V.D.C DISTRIBUTORS INC…

(hereinafter referred to as the "Distributor") and VINCENT CARRIERIE … (hereinafter referred

to as "Shareholder"). Defts' Ex. 2.

    Regarding arbitration, the Agreement states:

"23.1. <u>Arbitration Rights</u>. Any dispute or claim that the Company may have against
the Distributor, or the Distributor may have against the Company … arising out of,
or, in connection with this Agreement or the relationship of the parties, including, but
not limited to, its terms and interpretation thereof, statutory and common law claims
arising under federal, New York State and New York City laws pertaining, but not
limited to, commercial transactions, employment practices; discrimination, retaliation;
employee benefits; and wage and hour requirements (including, but not limited to,
misclassification claims) shall, upon written request of either party, be resolved by
arbitration as provided herein.
…

        23.2 <u>Arbitration Rules/Organizations</u>. The arbitration … shall be administered
by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in
accordance with the Expedited Procedures in those Rules. Each party shall bear its
own fees, costs and disbursements in such proceeding, unless the arbitrator awards
fees pursuant to a statute authorizing the award of such fees. …

23.4 <u>Limitation of Rights</u>. Both parties understand and agree that, by proceeding to
arbitration with respect to a claim, neither party shall have the right to litigate that
claim in court or to have a jury trial on that claim, or to engage in pre-arbitration
discovery except as provided in the JAMS Comprehensive Arbitration Rules and
Procedures and the Expedited Procedures in those Rules.
…

23.5 <u>Individually Named Parties Only</u>. All parties to the arbitration must be individually named. … The arbitrator's authority to resolve claims is limited to claims between the Distributor and the Company, and the arbitrator's authority to make awards is limited to awards to the Distributor and the Company." Defts. Ex. 2.

On September 10, 2021, Plaintiffs brought wage and hour and misclassification claims. ECF No. 1. Plaintiffs amended the complaint and consistently alleged that Defendants committed wage and hour violations and misclassified Plaintiffs as independent contractors. On or about November 30, 2021, Defendants moved to dismiss several individual Defendants under Fed. R. Civ. P. 12(b)(6). ECF No. 42. On or about September 16, 2022, Defendants moved to compel arbitration under the Federal Arbitration Act. ECF No. 64. On September 6, 2023, this Court granted Defendants' motion to compel arbitration. In the order, this Court stated,

"In the Current Agreement, the parties agreed to arbitrate "[a]ny dispute or claim that the . . . Distributor may have against the Company . . . arising out of, or, in connection with this Agreement or the relationship of the parties." (Doc. 68 at 12.) The language of the arbitration provisions in both the Prior Agreements and the Current Agreements is quite broad." ECF No. 97 (internal citations omitted). The Court added that "further, the Agreements as a whole are expansive and "determine[] the conditions of Plaintiffs' employment in virtually every area." Pltfs' Ex. B.

On January 7, 2025, this Court denied Plaintiffs' motion for reconsideration and stated:

"In their reply brief in support of their motion to compel, Defendants specifically addressed this argument and stated that the agreement's arbitration clause "expressly includes Plaintiffs' misclassification claim," and therefore it "must be resolved by arbitration." (Doc. 81 at 10–11 (emphases in original).) I agree. My finding that the Distributor Agreements' terms were "quite broad" so as to cover the "dispute at issue in this litigation" sufficiently considered Plaintiffs' arguments. (Opinion at 9–10.) I am not "required to delineate every reason for the decisions [I] make[]; it is in [my] discretion to respond specifically—or not—to arguments made by the parties." Pltfs' Ex. C (ECF No. 134 internal citations omitted)

Plaintiff Vincent Carrieri submitted his employment claims to JAMS under JAMS Minimum Standards because Plaintiffs' claims under the FLSA and NYLL fall squarely within the "employment" category. Pltfs' Ex. A. Additionally, the JAMS Comprehensive Arbitration Rules ("Comprehensive Rules") incorporate Rule 31 that refers the parties to JAMS Arbitration Schedule

of Fees and Costs ("Fee Schedule"). Defts' Ex. R and S. Pepsi submitted letter motions arguing hat

the Fee Schedule and Minimum Standards did not apply. Defts' Ex. A, C, D – G.

JAMS properly determined that Plaintiff correctly applied the Fee Schedule and the

Minimum Standards apply. Defts' Ex. D and H. JAMS stated:

> "Upon review of the Demand and accompanying documents JAMS has determined that JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness applies.
>
> Please carefully review the enclosed Minimum Standards as JAMS requires that the parties comply with them in order to proceed.
>
> The Minimum Standards will apply notwithstanding any contrary provisions in the parties' pre-dispute arbitration agreement.
>
> The parties' agreement to proceed constitutes agreement to the foregoing.
>
> Any further issue about whether the Minimum Standards apply should be directed to the arbitrator once appointed. After hearing from the parties, if the arbitrator believes JAMS should revisit the issue, the arbitrator may advise JAMS accordingly. JAMS will then review the issue, taking the arbitrator's position into consideration, and will make a final determination." Defts' Ex. D.

JAMS reiterated, in relevant part, that:

> In light of the arguments raised JAMS will continue to apply its Minimum Standards to this arbitration at this time.
>
> In JAMS' September 10, 2024 letter the parties were advised that any further issue about whether the Minimum Standards apply should be directed to the arbitrator once appointed. After hearing from the parties, if the arbitrator believes JAMS should revisit the issue, the arbitrator may advise JAMS accordingly. JAMS will then review the issue taking the arbitrator's position into consideration, and will make a final determination. The letter further explained that the Minimum Standards will apply notwithstanding any contrary provisions in the parties' pre-dispute arbitration agreement. The Minimum Standards are not a set of arbitration rules, but rather an administrative policy that acts as an overlay to the JAMS Rules. The application of JAMS Comprehensive Rules pursuant to the parties' arbitration agreement is not contrary to the Minimum Standards and JAMS will continue to apply the Comprehensive Rules to this arbitration at this time.
>
> Any further issue with regard to the applicability of the Minimum Standards, applicable rules, or fee sharing for this matter may be raised with the arbitrator upon appointment." Defts' Ex. H

A copy of the Minimum Standards is attached hereto. Pltfs' Ex. A. They apply to "employment-related disputes." *Id.* The Minimum Standards "apply to arbitrations based on pre-dispute agreements that are required as a condition of employment. JAMS will administer mandatory arbitrations in employment cases only if the arbitration provision complies with JAMS Minimum Standards. *Id.* "If an arbitration is based on a clause or agreement that is required as a condition of employment, JAMS will accept the assignment only if the proceeding complies with the Minimum Standards of Procedural Fairness for Employment Arbitration." *Id.*  "The only fee that an employee may be required to pay is JAMS' initial Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services." *Id.*

The "Minimum Standards do not apply if the agreement to arbitrate was individually negotiated by the employee and employer, or if the employee was represented or advised by counsel during the negotiations." *Id.* Here, Plaintiff did not "individually negotiate" the agreement and he was not represented or advised by counsel during negotiations.

Defendants have refused to pay any fees to pursue arbitration and JAMS has closed the arbitration. Pltfs' Ex. D. Defendants' motion must be denied or alternatively, this Court should hold that Defendants waived arbitration

## 3. <u>ARGUMENT</u>

### 3.1. <u>The Court Should Deny Defendants Motion Under the Law of the Case Doctrine and Direct Defendants to Comply with JAMS' Determinations.</u>

The Court should deny Defendants' motion because it already ruled that JAMS has authority to interpret its Comprehensive Rules, Fee Schedule, and apply the Minimum Standards. In compelling arbitration, the Court found the arbitration clause "broad," covering disputes over interpreting the agreement and applying JAMS' rules. On reargument, the Court reaffirmed that misclassification issues—whether Plaintiff is an "employee" or "independent contractor"—are for

the arbitrator. These rulings are law of the case, and Defendants offer no valid reason to revisit

them. The motion should be denied, and the issues referred to JAMS.

"The doctrine of law of the case is similar to the issue preclusion prong of res judicata in

that it limits relitigation of an issue once it has been decided," but applies to rulings within the same

litigation. *Rezzonico v. H & R Block, Inc.,* 182 F.3d 144, 148 (2d Cir. 1999). While not binding, it

advises courts not to revisit prior rulings absent "cogent" and "compelling" reasons such as a

change in controlling law, new evidence, or the need to correct clear error or prevent injustice. *Ali v.*

*Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008). Here, Defendants "bear the initial burden of justifying

why the court should reconsider issues that it had previously decided." *In re N. Telecom Ltd. Sec. Litig.*,

42 F. Supp. 2d 234, 239 (S.D.N.Y. 1998). They have not met that burden; the motion fails.

### 3.1.1. It is Law of the Case that the Arbitration Clause is "Broad" and Requires Arbitration of "any Dispute" Including JAMS' Application of its Minimum Standards and Fee Schedule.

It is law of the case that the arbitration clause is "broad" and requires Defendants to submit

disputes over JAMS' rules, Minimum Standards, and Fee Schedule to the arbitrator. This Court

already held that "the scope of the arbitration provisions includes the dispute at issue," citing the

parties' agreement to arbitrate "any and all disputes" involving "the interpretation of application of

the provisions," and "any dispute or claim" arising from the agreement or party relationship. Pltfs'

Ex. B. The Court reaffirmed this by denying reconsideration and again describing the clause as

"quite broad." Pltfs' Ex. C. Under *Wall St. Assocs., L.P. v. Becker Paribas, Inc.*, 818 F. Supp. 679, 683

(S.D.N.Y. 1993), aff'd, 27 F.3d 845 (2d Cir. 1994), this ruling is law of the case, and plainly covers

disputes over JAMS' rules, Fee Schedule, and Minimum Standards.

Because the arbitration clause is broad, a "presumption of arbitrability" applies—even

"collateral matters" must be arbitrated if they involve contract interpretation or the parties' rights.

*Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. NRG Energy, Inc.*, 53 F.4th 42, 49 (2d Cir. 2022);

*see Armor All/STP Prods. Co. v. TSI Prods., Inc.,* 337 F. Supp. 3d 156, 169 (D. Conn. 2018) (broad

clauses shift the burden to the party opposing arbitration to show the dispute falls outside the

clause). Defendants have not rebutted that presumption as to the procedural disputes here. The

arbitrator, not this Court, should decide the motion.

 The Court should deny Defendants' motion because the parties' broad arbitration agreement

clearly delegates disputes over the agreement's interpretation, JAMS' rules, Minimum Standards, and

Fee Schedule to the arbitrator. Defendants' request for judicial intervention contradicts the

Agreement's express terms.

 The Agreement states that "any dispute or claim" between the parties "shall … be resolved

by arbitration." Defts' Ex. 2 (¶ 23). This dispute falls within that "any dispute" scope. It also requires

arbitration of "any dispute … arising out of, or in connection with this Agreement or the

relationship of the parties," including claims related to employment practices, discrimination,

retaliation, benefits, and "wage and hour requirements (including misclassification)." Defts' Ex. 2 (¶

23.1). Having obtained an order compelling arbitration of these wage and hour and misclassification

claims, Defendants cannot now avoid it.

 Section 23.4, "Limitation of Rights," bars litigating claims in court once arbitration has

begun, prohibiting jury trials and pre-arbitration discovery except under JAMS rules. Defts' Ex. 2 (¶

23.4). Since Defendants chose arbitration for these claims, they cannot relitigate them here.

 Defendants cannot force arbitration of these disputes and then ask the Court to ignore the

provisions they agreed must be arbitrated. Disregarding arbitration clauses covering contract

interpretation, wage and hour, and misclassification claims would be "commercially unreasonable"

and contrary to the parties' expectations. *Samba Enters., LLC v. iMesh, Inc.,* 2009 WL 705537, at *5

(S.D.N.Y. Mar. 19, 2009), aff'd, 390 F. App'x 55 (2d Cir. 2010); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l

Corp.,* 559 U.S. 662, 684 (2010). Defendants' interpretation would render key provisions—like ¶ 23

and Rule 31 of the Comprehensive Rules, which incorporate JAMS' Fee Schedule and Minimum

Standards—meaningless, violating basic contract interpretation principles. *LaSalle Bank Nat'l Ass'n v.*

*Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005).

Defendants moved to compel arbitration only after failing to dismiss individual defendants

in federal court. Having chosen arbitration, they now object to its costs, which arise under the JAMS

rules they agreed to and which JAMS has reasonably applied. *See Shubin.*, 2022 WL 168152.

*In re Arb. Between Gen. Sec. Nat. Ins. Co. & AequiCap Program Adm'rs*, 785 F. Supp. 2d 411

(S.D.N.Y. 2011), supports denying Defendants' motion. There, a broad arbitration clause and no

limits on arbitrator authority allowed the panel to award attorneys' fees. Similarly, here the

agreement authorizes JAMS to apply its rules, enforce Minimum Standards, and allocate fees under

its Fee Schedule. Defendants' motion should be denied.

*Bancol Y Cia. S. En C. v. Bancolombia S.A.,* 123 F. Supp. 2d 771 (S.D.N.Y. 2000), also supports

denial, confirming that broad arbitration clauses delegate authority over procedural rules to the

arbitrator. There, the court remitted disputes over contract interpretation and execution to

arbitration, as here. Such clauses empower arbitrators to decide procedural matters, subject only to

limited post-award review. The law of the case doctrine supports denying Defendants' motion.

### 3.1.2.   <u>The Law of the Case Requires the JAMS Arbitrator, Not the Court, to Decide</u> <u>Misclassification Issues.</u>

It is the law of the case that the arbitrator must decide Plaintiff's alleged misclassification

dispute. Defendants' request for the Court to decide (in the interim or otherwise) whether Plaintiff is

an "independent contractor" should be rejected, and the motion denied.

The Court previously held that the arbitration clause covers Plaintiff's misclassification

claim, stating: "In their reply brief in support of their motion to compel, Defendants specifically

addressed this argument and stated that the agreement's arbitration clause 'expressly includes

Plaintiffs' misclassification claim,' and therefore it 'must be resolved by arbitration.' I agree. My

finding that the Distributor Agreements' terms were 'quite broad' so as to cover the dispute at issue in this litigation." ECF No. 134.

Defendants cannot now reverse course and ask the Court to decide an issue they earlier assigned to arbitration. The law of the case doctrine bars relitigation. The Court should reject Defendants' inconsistent position and deny the motion.

Defendants are not entitled to any inference or court order that Plaintiff was an "independent contractor" at this stage or during any interim period. *See Pilyavsky v. U.S. Dep't of Just.*, No. 05 CIV. 2920 (DC), 2006 WL 536635, at *2 (S.D.N.Y. Mar. 6, 2006) ("drawing all reasonable inferences in favor of Pilyavsky, it cannot be said at this stage of the litigation that he was an independent contractor as a matter of law"); *Stanley v. City of New York*, 71 Misc. 3d 171, 176, 141 N.Y.S.3d 662, 666 (N.Y. Sup. Ct. 2020); *Perrin v. Hilton Int'l, Inc.*, 797 F. Supp. 296, 299 (S.D.N.Y. 1992). Accordingly, Defendants' entire motion—including Section II seeking interim arbitration fee payments—must be denied.

The Court should reject Defendants' argument that simply labeling Plaintiff an "independent contractor" controls his status. "[A] company's decision to label a worker as an 'independent contractor' … will not carry the day." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 399 (2d Cir. 2015). Classification depends instead on a multi-factor test and the economic realities of the relationship. *See Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 350 (E.D.N.Y. 2015).[1]

FLSA rights cannot be waived by contract, contrary to Defendants' claim. *See Barrentine*, 450 U.S. at 740. Allowing employers to circumvent wage protections through contract language would undermine the statute. As one court recently noted, "the notion that employees read contracts of adhesion … is, at best, a legal fiction." *Frazier v. X Corp*, 739 F. Supp. 3d 219, 230 (S.D.N.Y. 2024)

---

[1] Whether Plaintiff is an employee or "independent contractor"—because he allegedly hired his own employees or for any other reasons Defendants argue—is also for the arbitrator to decide and is an employment question.

(applying JAMS Minimum Standards and ordering defendants to pay full arbitration fees).
Defendants' motion must fail.

Assuming Defendants now argue the arbitration agreement applies only between "business entities," or that Plaintiff acted solely as an "independent contractor" through a corporate vehicle, their motion fails on an independent basis. The arbitration clause plainly covers disputes only between the "Company" (i.e., Pepsi Defendants) and the "Distributor," defined in the Agreement as "V.D.C. Distributors Inc." Plaintiff, Vincent Carrieri, is identified only as a "Shareholder" in the Agreement. The arbitration provision does not extend to him in his individual capacity or as a shareholder. *See* Defts' Ex. 2 (¶ 23) (stating "any dispute … the Company may have against the Distributor or the Distributor may have against the Company," with no reference to the individual Plaintiff or Shareholder) (emphasis added). The agreement also states, "The arbitrator's authority to resolve claims is limited to claims between the Distributor and the Company, and the arbitrator's authority to make awards is limited to awards to the Distributor and the Company." *Id.* (¶ 23.5).

Plaintiff's employment law claims were brought in his individual capacity—not by "V.D.C. Distributors Inc." or as a "Shareholder." *See American Express Bank, Ltd. v. Uniroyal, Inc.,* 164 A.D.2d 275, 278, 562 N.Y.S.2d 613, 616 (1st Dep't 1990) (terms in capital letters are interpreted according to their defined meaning); *see also Marathon Private Equity Fund I, LLC v. Questor Mgmt. Co., LLC*, 20 Misc.3d 1123(A), 2008 WL 2840355, at *4 (Sup. Ct. July 22, 2008) (rejecting interpretation inconsistent with parties' definitions). Thus, under Defendants' own reasoning, no binding arbitration agreement exists between the individual Plaintiff and Defendants, and Plaintiff's claims must proceed in court.

Defendants cannot have it both ways. If misclassification claims are covered by the arbitration clause, they must be resolved by the arbitrator under JAMS Fee Schedule and Minimum Standards. If the clause applies only to "business entities" and excludes Plaintiff's individual claims,

14

those claims must proceed in court because the defined terms exclude Plaintiff in his individual

capacity. Either way, Defendants' motion fails. They cannot contradict their prior positions or

rewrite the agreement now. *See Donohue v. Cuomo*, 38 N.Y.3d 1, 12 (2022). Their shifting stance

warrants denial of the motion and suggests waiver of arbitration. The law of the case doctrine also

requires denial.

### 3.2.  **JAMS, Not the Court, Has Authority Over Procedural Matters, Including Interpretation of the Comprehensive Rules, Application of the Minimum Standards, and Allocation of Fees and Costs.**

JAMS—not this Court—has exclusive authority over procedural issues under the arbitration

agreement, including interpreting the Arbitration Rules, enforcing the Fee Schedule, and deciding if

the Minimum Standards apply.

### 3.2.1.   **The Parties' Agreement and JAMS' Comprehensive Rules Delegate Rule Interpretation and Fee Allocation to the JAMS Arbitrator.**

The agreement and JAMS' Comprehensive Rules clearly delegate authority over procedural

rules and fee allocation to the JAMS arbitrator. Defendants improperly ask the Court to override

JAMS' decision, despite contractually delegating this authority. Under the broad arbitration clause

and case law, these issues belong exclusively to the arbitrator—not the Court.

JAMS' Comprehensive Rules—acknowledged by Defendants—clearly delegate disputes

about rule interpretation and applicability to the arbitrator. The arbitrator has final authority to

resolve issues regarding the interpretation of rules and the conduct of the arbitration. Additionally,

jurisdictional and arbitrability disputes, including those concerning the formation, existence, validity,

interpretation, or scope of the arbitration agreement and the proper parties, must be submitted to

and decided by the arbitrator as a preliminary matter. *See* Defts' Ex. R (Rule 11). For these reasons,

the motion must be denied

In *Stemcor USA, Inc. v. Miracero*, 66 F. Supp. 3d 394, 399 (S.D.N.Y. 2014), the court held that

incorporation of rules delegating arbitrability issues to the arbitrator is clear evidence of the parties'

intent to delegate those issues. Here, the parties incorporated the JAMS Comprehensive Rules, including its Fee Schedule and Minimum Standards. Likewise, *Mackris v. O'Reilly,* No. 17 CIV. 9483 (DAB), 2019 WL 11000205, at *5 (S.D.N.Y. Mar. 6, 2019) confirms that such incorporation delegates rule interpretation and fee allocation to the arbitrator. Accordingly, these procedural matters must be decided by JAMS, not the Court, and Defendants' motion should be denied.

### 3.2.2.  Courts Consistently Hold that Procedural Questions Like Disputes Concerning Interpretation of Arbitration JAMS Rules and Fee Allocation are for the Arbitrator.

Defendants' motion, including their request in Point II to compel Plaintiff to pay arbitration fees "in the interim," involves procedural disputes that must be resolved by the arbitrator, not the Court. Courts in this Circuit consistently hold that fee allocation and interpretation of arbitration rules fall within the arbitrator's exclusive authority.

In *Frazier,* 739 F. Supp. 3d at 228, the court faced similar facts where defendants refused to pay arbitration fees and challenged the applicability of JAMS' Minimum Standards. The court held that defendants must comply with the Minimum Standards and pay all ongoing arbitration fees unless an arbitrator decides otherwise. *Frazier* makes clear that procedural questions about arbitration rules—including the applicability of Minimum Standards and who must pay fees—are matters for the arbitrator, not the court. This Court should follow *Frazier* and deny Defendants' attempt to litigate these arbitrable issues here.

Under New York law, it is well established that procedural disputes about fee allocation are for the arbitrator to decide. *Bernstein v. Perlmutter*, 37 N.Y.S.2d 95, 96 (Sup. Ct. 1942) held that the power to award arbitration fees and expenses—including the arbitrators' own fees—is inherent in the arbitrators' general authority to resolve the dispute. This authority necessarily includes determining who should bear those fees. Accordingly, the motion must be denied.

### 3.2.3. Defendants' Motion Violates the Court's Stay Order and Undermines the Arbitration that Defendants Sought.

The Court should reject Defendants' attempt to bypass arbitral procedures during the stay, which violates both the Federal Arbitration Act and this Court's stay order. Under the stay, federal litigation is barred until a final arbitration award is issued, after which the stay may be lifted to confirm or challenge the award. *See Brown v. Peregrine Enters., Inc.*, 2023 WL 8800728, at *2 (2d Cir. Dec. 20, 2023); *Shubin*, 2022 WL 168152; 9 U.S.C. § 3. This stay prevents unnecessary costs while arbitration proceeds. As the court explained in *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 693 (S.D.N.Y. 1966), "Section 3 makes no provision for preliminary trials of issues which have been, or may be, raised in an answer but commands a stay if the claim asserted in the complaint is one which is subject to the arbitration agreement." Defendants' motion is therefore misdirected and should be denied.

The Court's authority to oversee arbitration is narrowly limited. *See Bancol Y Cia. S. En C.*, 123 F. Supp. 2d 771, 772 (*citing Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980); *Compania Panemena Maritima San Gerassimo, S.A. v. J.E. Hurley Lumber Co.*, 244 F.2d 286, 288 (2d Cir. 1957)). Once parties agree to arbitrate, procedural questions must be left to the arbitrator, who determines the applicable procedural rules. The Court has little or no power for interlocutory review or to decide procedural rules upfront. *See Hunt v. Mobil Oil Corp.*, 654 F. Supp. 1487, 1511 (S.D.N.Y. 1987) (questioning the Court's jurisdiction to modify AAA charges).

Here, JAMS has already rejected Defendants' arguments, interpreted its Fee Schedule, and confirmed that the Minimum Standards apply. *See* Defts' Ex. D, H. Because procedural questions about JAMS' rules and fees are for the arbitrator—and JAMS has ruled against Defendants—the motion should be denied.

### 3.2.4.  The Court Should Discourage Defendants' Forum Shopping by Denying the Motion or Alternatively Find Waiver.

Defendants are improperly seeking two bites at the apple. The Court should deny their motion or find that Defendants have waived arbitration to discourage forum shopping. Having already compelled arbitration of all issues under a broad arbitration clause, the Court should reject Defendants' attempt to have this Court, rather than the arbitrator, interpret the Distributor Agreement, determine which JAMS rules apply, and allocate arbitration fees.

Defendants' effort to cherry-pick provisions of the Agreement and bypass the arbitral forum is an improper attempt at forum shopping. As the Supreme Court explained in *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 469 (1989), there is no federal policy favoring arbitration under any particular set of procedural rules; the federal policy ensures only the enforceability of arbitration agreements. Where, as here, a dispute falls within a broad arbitration clause, judicial inquiry must end. *See Birchwood Mgmt. Corp. v. Loc. 670, Stationary Eng'rs, RWDSU, AFL-CIO*, 154 A.D.2d 531, 531 (2d Dep't 1989). The Court should therefore deny the motion or hold that Defendants' repeated return to this Court amounts to waiver.

Defendants are engaging in "merits-based motion practice," which strongly favors waiver. *Forrest v. Unifund Fin. Grp., Inc., 2007 WL 766297*, at *6 (S.D.N.Y. Mar. 13, 2007). Their repeated attempts to litigate the dispute in Court are inconsistent with the arbitration process. *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002), warned against such forum shopping, holding that litigating a claim in court is clearly inconsistent with a party's right to arbitration, and parties should not be allowed to "take a case to the courts and then, if things go poorly there, abandon their suit in favor of arbitration." Here, before moving to compel arbitration, Defendants filed motions to dismiss several individual defendants. Now, by urging this Court to hold that Plaintiff is an "independent contractor," Defendants are again pursuing merits-based motion practice, which supports a finding of waiver.

Moreover, Defendants' refusal to pay JAMS' arbitration fees further evidences waiver. Pltfs' Ex. D. JAMS closed its file after Defendants refused to pay the standard fees despite multiple warnings. *Id.*; *Brandifino v. CryptoMetrics, Inc.*, 27 Misc. 3d 513, 524 (Sup. Ct. 2010), explained, when a party defaults on paying required arbitration fees, the purpose of arbitration—to provide a cost-effective and efficient dispute resolution—has been frustrated, and the nondefaulting party's right to have the dispute adjudicated outweighs the strong presumption in favor of arbitration. If Defendants continue to refuse compliance with JAMS' decisions, the Court should rightly find that they have waived their right to arbitration.

**3.3.** <u>**The Court Should Deny Defendants' Motion; Uphold JAMS' Fee Allocation and Application of the Minimum Standards and Direct these Procedural Disputes to the JAMS Arbitrator.**</u>

The Court should uphold JAMS' fee allocation, application of the Minimum Standards, and direct all related disputes to the arbitrator. JAMS has already considered Defendants' arguments, interpreted the Comprehensive Rules, allocated fees in accordance with the JAMS schedule, and applied the Minimum Standards, as reflected in Defendants' Exhibits D and H. Any further procedural questions properly belong before the arbitrator unless Defendants have waived their right to arbitration. Once arbitration is compelled, procedural matters such as applying the Minimum Standards and allocating fees fall within the arbitrator's authority. Courts consistently defer to the arbitrator's judgment on these issues unless there is evidence of misconduct or denial of due process, neither of which is present here. Accordingly, the Court should deny Defendants' motion.

**3.3.1.** <u>**JAMS Correctly Applied the Minimum Standards, Interpreted the Comprehensive Rules and Fee Schedule and Properly Directed Further Disputes to the Arbitrator.**</u>

JAMS correctly applied the Minimum Standards, interpreted its Comprehensive Rules and Fee Schedule and properly directed further disputes to the arbitrator. By agreeing to arbitrate under

the JAMS Comprehensive Rules, the parties incorporated its Fee Schedule, which assigns all but $400 of the arbitration fees and costs to Defendants. The motion should be denied.

The direct link between the JAMS Comprehensive Rules and the Fee Schedule demonstrates that JAMS properly allocated all but $400 of the arbitration fees and costs to Defendants. The Agreement provides that arbitration shall proceed "pursuant to its Comprehensive Arbitration Rules and Procedures." Defts' Ex. 2 (¶ 23.2). These Rules expressly include the Fee Schedule and, for employment-related disputes, the Minimum Standards. Defts' Ex. D, H, S. JAMS Comprehensive Rule 31(a) states that "each Party shall pay its pro rata share of JAMS fees and expenses **as set forth in the JAMS Fee Schedule**." Defts' Ex. R (citing Rule 31(a)) (emphasis added). The JAMS Fee Schedule specifies that for matters based on an agreement required as a condition of employment, the employee's fee obligation is limited to $400" and invokes the Minimum Standards. Defts' Ex. S. Accordingly, JAMS correctly ruled that Defendants are responsible for paying all arbitration fees and costs except for the $400 owed by the employee and properly applied the Minimum Standards.

"Pro rata" apportionment under JAMS Rule 31 "does not require a 50/50 split" as Defendants wrongly assert. *Frazier*, 739 F. Supp. 3d 219. "The fact that arbitration fees must be 'apportioned' does not dictate how the fees should be apportioned." *Id.* Here, Plaintiff paid the $400 initial filing fee, and under the agreed-upon rules, Defendants should pay the remainder.[2]

---

[2] The Court should reject Defendants' specious argument that the Current Agreement is a continuation of the practices under the Prior Agreement. Defendants suggest that arbitration fees were shared equally under the "Prior Agreement;" however the Prior Agreement is not at issue in this motion, it was not submitted as an exhibit, it contains an entirely different arbitration provision, there is no evidence to suggest the alleged prior practices occurred or would continue, and the Prior Agreement did not reference JAMS or its rules at all. ECF No. 143-1 (Gantman Decl.). If anything, the formation of a new contract with an entirely different arbitration clause, suggests the parties did not intend for prior practices to continue and thus any attempt to continue them runs contrary to the parties' intentions. The motion must fail.

The Agreement does not exclude the JAMS Fee Schedule. It explicitly states arbitration will be administered under JAMS' Comprehensive Rules, which include the Fee Schedule and Minimum Standards. See Defts' Ex. 2 (¶ 23.2); *see Varley v. Tarrytown Assocs., Inc.*, 477 F.2d 208 (2d Cir. 1973); *Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509 (S.D.N.Y. 2018), aff'd, 774 F. App'x 714 (2d Cir. 2019). Defendants cannot pick and choose which rules to follow.

The Agreement need not expressly name each incorporated provision. As the Second Circuit held in *Idea Nuova, Inc. v. GM Licensing Group, Inc.*, 617 F.3d 177 (2d Cir. 2010), it is "disingenuous" to invoke arbitration under specific rules while rejecting those rules' procedures. Similarly, Defendants cannot selectively enforce parts of the JAMS Rules while ignoring unfavorable provisions like the Fee Schedule or Minimum Standards.[3]

Defendants' claim that Section 19.1 bars applying the Fee Schedule and Minimum Standards because they are not expressly mentioned is baseless. Section 19.1 excludes additional promises "except as set forth herein," but the JAMS Fee Schedule and Minimum Standards are explicitly incorporated through the parties' agreement to arbitrate under JAMS and its Comprehensive Rules, which include the Fee Schedule and Minimum Standards by mandate.

Defendants' claim that Plaintiff "subverted Section 23.2" is false. Plaintiff complied with the Agreement and JAMS rules, which properly require Defendants to pay all but $400 of the fees. The Court should deny the motion.

---

[3] Defendants' reliance on *Miller v. Mercuria Energy Trading, Inc.,* 291 F. Supp. 3d 509, 518 (S.D.N.Y. 2018), aff'd, 774 F. App'x 714 (2d Cir. 2019), is misplaced. While Defendants cite *Miller* for limited incorporation, that case acknowledges broader incorporation when a contract states it is subject to or construed "in accordance with" another set of rules. *Miller* cites *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42 (2d Cir. 1993), and *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005), where courts held agreements fully incorporated external rules by reference. This principle applies here: the parties adopted the JAMS Comprehensive Rules in full, including the Fee Schedule and Minimum Standards.

Defendants wrongly claim that applying the JAMS Fee Schedule and Minimum Standards "re-writes the fee-sharing agreement." The Agreement has no express fee-sharing clause; the provision about each party bearing its own fees refers only to litigation costs like attorneys' fees—not arbitration or arbitrator fees. Courts have rejected similar arguments. *See Freeman v. SmartPay Leasing, LLC,* 771 F. App'x 926 (11th Cir. 2019).[4]

The Court should not infer any fee-sharing obligation, as such provisions must be "unmistakably clear." *Bonnie & Co. Fashions v. Bankers Tr. Co.,* 955 F. Supp. 203, 217 (S.D.N.Y. 1997); *PHL Variable Ins. Co. v. Mahler,* 321 F. Supp. 3d 392 (E.D.N.Y. 2018); Sage Sys., Inc. v. Liss, 39 N.Y.3d 27, 31 (2022). The Agreement contains no such clear provision, so none should be implied.[5]

Requiring Plaintiff to pay arbitration fees under ¶ 23.2 conflicts with the FLSA and NYLL. Under the FLSA and NYLL, prevailing employees can recover fees and costs. 29 U.S.C. § 216. Courts have held fee-sharing clauses unenforceable under the FLSA. *See Hudson v. P.I.P., Inc.,* 793 F. App'x 935 (11th Cir. 2019); *Zambrano v. Strategic Delivery Sols., LLC,* 2016 WL 5339552 (S.D.N.Y. Sept. 22, 2016). The JAMS Comprehensive Rules, Fee Schedule, and Minimum Standards control

---

[4] In this context, the ¶ 23.2 clause that each party bear "its own" costs may apply to non-employment disputes between the business entities "Distributor" and "Company" as defined in the Agreement. *See Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121 (2015) (American Rule that each litigant pays their own attorney's fees unless a statute or contract provides otherwise). Here, Plaintiff's individual FLSA and NYLL claims require Defendants to pay Plaintiffs' attorney's fees if Plaintiffs prevail. Moreover, the Agreement contains no clear clause mandating an equal split of arbitration costs.

[5] *Goobich v. Excelligence Learning Corp.,* No. 5:19-CV-06771-EJD, 2020 WL 5593011 (N.D. Cal. Sept. 18, 2020), is inapplicable. That case involved a dispute over royalties—not fee-shifting FLSA and NYLL statutes. Additionally, unlike here, where the agreement does not expressly require equal apportionment of arbitration costs, the contract in *Goobich* unambiguously stated that "the parties shall share the costs of [any] arbitration equally."

and override any conflicting fee-sharing terms in ¶ 23.2. JAMS Comprehensive Rule 4 ("Conflict with Law") states that applicable law governs over conflicting rules. Defts' Ex. R.[6]

Even if there were ambiguity about applying JAMS' Fee Schedule and Minimum Standards—which there is not—that issue is procedural and belongs to the arbitrator, not this Court. Therefore, Defendants' motion should be denied on this basis alone. Ultimately, the Court should deny the motion in full and refer the dispute to JAMS for arbitration, in accordance with the parties' agreement and JAMS rules.

### 3.3.2. JAMS Properly Determined that Arbitration was a Condition of Employment and Correctly Applied its Fee Schedule and Minimum Standards.

JAMS properly allocated all arbitration fees and costs—except $400—to Defendants and applied its Minimum Standards, as this is an "employment-related dispute" and the arbitration clause was a "condition of employment." Defts' Ex. D, H, R, S; Pltfs' Ex. A. The Court should deny the motion.

Although the arbitration agreement references the JAMS Comprehensive Rules, it is undisputed this dispute arises from an alleged employment relationship with claims under the FLSA and NYLL. Therefore, JAMS properly determined that the Minimum Standards apply regardless of the agreement's specific language. Pltfs' Ex. A. These mandatory standards are prerequisites for JAMS to administer employment arbitrations. *Id.* JAMS requires that employment-related arbitrations comply with these Minimum Standards to proceed. *Id.* These protections include capping the fees the employee (Plaintiff) must pay and ensuring a fair, accessible arbitration process.

---

[6] Plaintiff complied with JAMS' Comprehensive Rule 31(a), incorporated Fee Schedule and the Minimum Standards by paying the required $400 filing fee in this case. The arbitrator, not the Court, should determine what impact, if any, a perceived conflict between Rule 31(a) and 31(c) has on the Fee Schedule and Minimum Standards. *C.f.* Defts' Memo of Law. (Pg. 19). Either way, such a conflict would not prevent JAMS from applying its Minimum Standards and Fee Schedule as it did here. The motion must fail.

Among other protections, the Fee Schedule and Minimum Standards cap an employee's required fees at $400 and require the company to bear all other costs, including the arbitrator's professional fees. Pltfs' Ex. A. These Minimum Standards override any conflicting contractual provisions. Specifically, "If JAMS becomes aware that an arbitration clause or procedure does not comply with the Minimum Standards, it will notify the employer… [and] inform the employer that the arbitration demand will not be accepted unless there is full compliance." Pltfs' Ex. A.

In *Lang v. PTC, Inc.*, No. CV21-04451-KMESK, 2021 WL 5277190, at *4 (D.N.J. Nov. 12, 2021), the court addressed a nearly identical situation to the one at bar. There, too, the arbitration clause referred to the JAMS Comprehensive Rules, without expressly mentioning fees. The *Lang* court held that applying the Minimum Standards was appropriate and aligned with the reasonable expectations of the parties. "JAMS, we now authoritatively know, conducts such arbitrations in a particular manner: it has construed its rules, in employment-related arbitrations, to be subject to the overriding minimal procedural guarantees of the [JAMS Minimum Standards], which prohibit fee-sharing." *Id.* That same analysis applies here, and the Court should likewise uphold JAMS' determination.

The case at bar is indisputably an "employment-related dispute." Pltfs' Ex. A. Plaintiffs assert FLSA and NYLL claims, which are employment statutes. 29 U.S.C. § 203; N.Y. Lab. Law § 190; *Poletti et al. v. Pepsi-Cola Bottling Company of New York, Inc.,* No. 21-CV-7603 (VSB). The arbitration clause itself expressly covers "employment," "wage and hour" and "misclassification" claims. Defts' Ex. 2 (¶ 23.1). Defendants' misclassification argument itself confirms the dispute centers on whether an employment relationship existed.

Plaintiff signed the agreement as a condition of obtaining or continuing work, and so the Minimum Standards squarely apply. *Frazier*, No. 24-CV-02135(JSR), 2024 WL 3370887, at *7 (Minimum Standards apply where arbitration agreement was a condition of employment, even if

employee could theoretically opt out or seek other work). The mere possibility that Plaintiff could have continued under a prior agreement or sought other employment does not change this. As in *Frazier*, the Court should consider the economic realities, not labels. Here, the arbitration agreement was a functional requirement to obtain work and income. JAMS broadly applies its Minimum Standards wherever arbitration is required as a condition to secure or retain work, and this case falls squarely within that definition.[7]

Moreover, Plaintiff regularly performed services under Defendants' control and relied on the income—demonstrating a functional employment relationship. JAMS applies its Minimum Standards even when parties label the relationship as independent contracting if the economic realities show employment. This aligns with the "economic realities" test used in wage and hour laws. *Gustafson v. Bell Atl. Corp.,* 171 F. Supp. 2d 311, 324 (S.D.N.Y. 2001). JAMS applies its Minimum Standards to all employment disputes, including those involving misclassified workers.

Finally, public policy strongly supports applying the Minimum Standards, which guarantee fundamental fairness in employment arbitration—such as neutral arbitrators, the right to counsel, reasonable discovery, and employer payment of costs. Courts and JAMS appropriately view employer attempts to avoid these protections with skepticism.

For all these statutory, factual, and policy reasons, JAMS properly applied its Minimum Standards. The Court should defer to JAMS's decision and deny Defendants' request to shift arbitration fees to Plaintiff or impose a different procedure.

---

[7] Even if the agreement was not explicitly mandatory (which it was), Plaintiff was economically compelled to sign it to continue working. Courts and JAMS both recognize that when continued employment or income is conditioned on signing an arbitration agreement, that agreement is a "condition of employment" in practice. *See Frazier.*, No. 24-CV-02135(JSR), 2024 WL 3370887, at *7. The JAMS Minimum Standards exist precisely to address this power imbalance.

### 3.3.2.1. <u>JAMS Properly Applied the Minimum Standards Because the Distributor Agreement was not Individually Negotiated and Plaintiff was not Represented by Counsel.</u>

The Distributor Agreement was neither individually negotiated nor was Plaintiff represented or advised by counsel, as the JAMS Minimum Standards footnote requires. See Defts' Ex. D; Pltfs' Ex. A. Thus, the footnote exception does not apply, and Defendants' motion fails.

The footnote exception to the JAMS Minimum Standards applies only to sophisticated and represented executives who personally negotiated their agreements or retained counsel for negotiations. Pltfs' Ex. A; *See, e.g., Williams v. Tully*, 2005 WL 645943 (N.D. Cal. Mar. 18, 2005) (CEO/co-founder with counsel individually negotiated agreement); *Stafford v. Flextronics Int'l USA, Inc.*, 2016 WL 880505 (D. Kan. Mar. 7, 2016) (CEO with counsel negotiated). That is not the situation here.

Plaintiff sold and delivered soda; Defendants are a large, multi-million or billion-dollar enterprise.[8] Plaintiff was not a high-level employee with legal counsel. *See Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 465 (E.D.N.Y. 2006) (paralegal did not "individually negotiate" arbitration agreement). The stark power imbalance supports applying the JAMS Minimum Standards. *See Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015) (recognizing unequal bargaining power in FLSA cases). JAMS correctly applied its standards; the motion should fail.

Plaintiff did not "individually negotiate" the Distributor Agreement. Defendants concede that the agreement was formed through a now-defunct "Distributor Association" that purported to

---

[8] The Honickman Companies, https://www.hongrp.com/ (last visited Oct. 31, 2024) (referring to Respondents as "one of the leading beverage manufacturers and distributors" and "more than a billion drink servings annually. More than 60 brands. Five companies. One family" and "the Honickman Companies are collectively one of the largest independent beverage employers in the country"); *United States v. Honickman*, No. CIV. A. 92 2436, 1992 WL 350620 (D.D.C. Nov. 2, 1992) (holding Honickman Respondent liable for over $1 million for antitrust violations); David C. C. N. D. Schulte, The Great Philadelphia Families, Philadelphia Magazine (Dec. 10, 2016), https://www.phillymag.com/news/2016/12/10/the-great-philadelphia-families/. ("with a recent estimated net worth of $850 million, the Honickmans are among Philly's richest families").

represent a group of workers—not Plaintiff personally. This admission forecloses any argument that the "individual negotiation" footnote to the JAMS Minimum Standards applies. Pltfs' Ex. A.

Even if the Distributor Association were a union—which it was not—a collective bargaining agreement (CBA) is not, by definition, "individually negotiated." *In re State*, 147 N.H. 106, 109, 784 A.2d 695, 698 (2001) ("collective bargaining process is not intended to be the result of the employer negotiating with a single employee. Rather, it is meant to be the result of negotiations between an employer and all employees, collectively"); *see Lullo v. Int'l Ass'n of Fire Fighters, Loc. 1066*, 55 N.J. 409, 262 A.2d 681 (1970) (union represents all employees in "collective negotiation"); *Nelson v. Am. Standard Inc.,* No. 2-07-CV-10 (TJW), 2007 WL 2329827 (E.D. Tex. Aug. 13, 2007) (CBA is not individually negotiated). Moreover, "FLSA rights take precedence over conflicting provisions in a collectively bargained compensation." *Barrentine*, 450 U.S. at 740. The motion fails.

The Distributor Agreement was not "individually negotiated" because it was identical for all Plaintiffs, further disqualifying it from the JAMS footnote exception. *See In the Matter of the Arbitration Between [Claimant 1] and [Respondent 1],* 2009 WL 6361357 (agreement not individually negotiated where substantially similar forms were used); *E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C.,* 448 F. Supp. 2d 458, 465 (E.D.N.Y. 2006) (preprinted, employer-drafted contract not individually negotiated). The motion should be denied.

The Distributor Agreement was imposed on Plaintiff—and all the other Plaintiffs in this case—as a "take it or leave it" proposition, without "individual" negotiation. "The notion that employees read contracts of adhesion, such as those at issue here, is, at best, a legal fiction." *Frazier*, No. 24-CV-02135 (JSR), 2024 WL 3370887, at *7 (ordering application of JAMS Minimum Standards and requiring Defendants to pay full fees and costs).

Plaintiff was not "represented or advised by counsel during the negotiations." Defts' Ex. D; Pltfs' Ex. A. There is no evidence any Plaintiff retained counsel, received legal advice, or that

counsel for the individual Plaintiff(s) communicated with Defendants. The Association's authority to represent each Plaintiff is disputed, it plainly was not a law firm and its counsel is not counsel for Plaintiff. Ultimately, Plaintiff had no counsel and did not "individually" negotiate the Agreement. Any disputes to the contrary are for the arbitrator. Therefore, Defendants' motion fails.

### 3.3.2.2.    Requiring Plaintiffs to Pay Substantial Upfront Arbitration Fees in FLSA and NYLL Claims Undermines JAMS Minimum Standards and the Statutory Intent.

Requiring Plaintiff to pay thousands of dollars in upfront arbitration fees to pursue FLSA and NYLL claims undermines the core purpose of both statutes and violates the JAMS Minimum Standards, which are designed to ensure that arbitration provides remedies equivalent to those available in court. Pltfs' Ex. A. Unlike litigation—where statutory fee-shifting provisions, *see Green v. Torres*, 361 F.3d 96, 100 (2d Cir. 2004), allow workers to access counsel without bearing prohibitive costs—arbitration fees imposed on employees create a financial barrier that deters enforcement of wage rights. As the Supreme Court explained in *Barrentine,* 450 U.S. at 739, the FLSA ensures "a fair day's pay for a fair day's work" and must be interpreted in a manner that facilitates access to enforcement. Similarly, NYLL is remedial in nature and aims to balance the unequal power dynamic between employer and employee. *Chu Chung v. New Silver Palace Restaurants, Inc.*, 272 F. Supp. 2d 314, 317 (S.D.N.Y. 2003). JAMS' fee allocation rules and Minimum Standards were adopted precisely to avoid deterring meritorious claims through cost-prohibitive mechanisms. Imposing such costs here—where Plaintiff is challenging wage theft and misclassification—would frustrate the statutes' purposes and contradict JAMS' policies. *See Howard v. Anderson*, 36 F. Supp. 2d 183, 187 (S.D.N.Y. 1999). The Court should therefore reject Defendants' attempt to shift fees to Plaintiff and refer any dispute to the arbitrator.

4. **<u>CONCLUSION</u>**

For the foregoing reasons, the Court should deny Defendants' motion in its entirety. The law of the case requires that disputes concerning the application of JAMS' Minimum Standards, fee schedule, and rule interpretations be resolved in arbitration, not in court. JAMS properly determined that this employment dispute arises under an employment agreement and that the Minimum Standards apply. Substituting the Court's judgment for JAMS and requiring Plaintiff to bear substantial upfront arbitration fees would contravene the protective purposes of the FLSA and NYLL, as well as JAMS' own procedural rules to which the parties agreed. The Court should enforce the stay it previously issued, respect the parties' delegation to the JAMS arbitrator, and decline to entertain Defendants' attempt to relitigate settled procedural issues in this forum.

Signed,

By: _____*/s/ Clifford Tucker*_____
                 Clifford Tucker, Esq.,